Alva Strader, Township Treasurer of Township Number 14, Range Number 9, Douglas County, Illinois et al., Plaintiffs, v. Board of Education of Community Unit School District Number 1 of Coles County, Illinois et al., Defendants.

W. S. Brown et al., Petitioners to Intervene-Appellants, v. Alva Strader, Township Treasurer of Township Number 14, Range Number 9, Douglas County, Illinois et al., Plaintiffs-Appellees, and Board of Education of Community Unit School District Number 1 of Coles County, Illinois et al., Defendants-Appellees.

Gen. No. 9,901.

438

440

Opinion filed October 26, 1953. Released for publication December 1, 1953.

LAUHER & FRUIN, of Paris, for appellants; ROGER FRUIN, of Paris, and HARRY I. HANNAH, of Mattoon, of counsel.

H. OGDEN BRAINARD, of Charleston, for certain appellee.

MASSEY, ANDERSON & GIBSON, of Paris, for certain other appellee.

NICHOLS & JONES, of Tuscola, for certain other appellee.

Mr. Justice Wheat delivered the opinion of the court.

The facts and trial court proceedings in regard thereto from which this appeal arises are stated in the Supreme Court opinion (*Strader v. Board of Education,* 413 Ill. 610) transferring the cause to this court. A somewhat more detailed statement of the case is deemed desirable for decision of the issue which the Supreme Court found properly raised.

Plaintiffs, the Township Treasurer and the Trustees of Schools of Township 14, Range 9, Douglas county, Illinois, filed their complaint in interpleader in the circuit court of that county, naming as defendants three community unit school districts located in Douglas and Coles counties and hereinafter referred to as "Charleston District," "Oakland District" and "Arcola District."

The complaint alleged that prior to July 1, 1948, plaintiffs had title to school property and custody of school funds of six school districts or parts thereof then existing in said township, one of which old districts was commonly known and is hereinafter referred to as "Hindsboro District"; that as of July 1, 1948, all of said old districts were automatically dissolved and became a part of one or more of the three defendant new districts; that in particular, upon formation of the new districts, a part of the old Hindsboro District became included in each of the defendant districts; and that based upon the amount of taxes collected in 1947, the property of the old Hindsboro District should be divided as follows among the new districts:

| | |
|---|---|
| Arcola District | 51.7% |
| Oakland District | 35.6% |
| Charleston District | 12.6% |

The complaint further alleged in substance that plaintiffs had on hand and undistributed in excess of $150,000, being the proceeds of sale of certain bonds issued by the old Hindsboro District prior to July 1, 1948, and in addition thereto approximately $3,350 in taxes levied on property in the Hindsboro District for the purpose of paying principal and interest on said bond issue. Finally, the complaint alleged that plaintiffs were ready and willing to distribute said property to such of the defendant districts as might be entitled thereto but that there was a conflict among the defendants as to the manner in which such distribution should be made. Leave was therefore prayed to pay the funds and deliver the property into court for distribution as the court might direct, upon the defendants' interpleading with one another to determine their respective rights therein.

The defendant Oakland District thereafter filed its answer and cross-complaint alleging that the bonds referred to in the complaint, in the amount of $150,000, had been issued prior to July 1, 1948, pursuant to an election held in Hindsboro District for the purpose of building an addition to its then existing school building, that the proceeds of the bond issue had never been used or committed for the intended purpose which could no longer be accomplished, and that the taxpayers of the old Hindsboro District were paying taxes levied on their property for retirement of the bonds. The pleading further denied that the assets of the old districts should be divided as alleged in the complaint and prayed that plaintiffs be ordered to retire the Hindsboro District bond issue by using the bond sale proceeds, interest from securities in which the proceeds had been invested, and tax moneys on hand.

The defendants Arcola District and Charleston District thereafter filed their respective answers which in substance admitted the factual allegations of the complaint but denied that the funds and property in plaintiff's hands should be distributed as alleged in the complaint.

On the date the matter was set for hearing before the court, nine residents, citizens and taxpayers of the old Hindsboro District filed, on behalf of themselves and all others similarly situated, a written petition asking leave to intervene in the principal suit. The petition alleged in detail the facts relating to the Hindsboro District bond issue, in substance as alleged in the answer and cross-complaint of the defendant Oakland District, and prayed that petitioners be made parties defendant and be granted leave to file their answer to the complaint.

This petition for leave to intervene was denied and the matter proceeded to hearing, the court indicating that if it should change its opinion, leave to intervene would be granted at a later date. Upon the hearing a stipulation entered into by plaintiffs and the defendant districts was admitted in evidence by which the parties stipulated in substance that the allegations of fact contained in the complaint and in the cross-complaint of the Oakland District as hereinabove detailed were true. In addition the defendant districts by separate stipulation effectively agreed that the complaint sets forth the proper distribution of funds among the three districts.

The only other evidence offered was the testimony of the plaintiff Treasurer who stated that all assets of the old districts, except those mentioned in the complaint, had been distributed to the new districts and

that the proceeds of the Hindsboro District bond issue were invested in government securities at 1⅜%, the interest being deposited in the bond issue fund.

At the conclusion of the hearing the court granted counsel for petitioners-to-intervene leave to submit authority in support of its petition and to prepare such petition as would be filed if leave so to do were granted. Pursuant thereto, petitioners-to-intervene thereafter filed a new written petition to intervene to which was attached a copy of the proposed intervening petition. In addition to the matters alleged in the original petition hereinabove detailed, the new petition set forth that Hindsboro District, being dissolved, had no Board of Education to act in its behalf; that the petitioners could not be fairly represented by the plaintiff Treasurer and Trustees and the defendant unit districts because the interests of the districts, while adverse to one another among themselves with respect to distribution of the funds of the old Hindsboro District, are identical to one another as against petitioners; that to provide for payment of interest and principal on the bond issue in question, there had been levied on all taxable property in the old Hindsboro District a direct annual irrepealable tax in an amount sufficient for payment thereof; that the proceeds of the bond issue could not legally be distributed to the three new districts without first offsetting therefrom the indebtedness of the Hindsboro District; that otherwise the petitioners, as taxpayers of the old Hindsboro District, would be taxed to pay for retirement of the bond issue and in addition thereto would be subject to the general school tax as taxpayers in the defendant districts. The proposed intervening petition further alleged that various provisions of the school code are unconsti-

tutional if interpreted to require distribution of the proceeds of the bond issue to the defendant districts without set-off of the bonded debt or in the alternative without extending the obligation for payment thereof to the defendant districts.

The intervening petition prayed that petitioners be made parties defendant on behalf of themselves and all others similarly situated; that the County Clerks of Douglas and Coles counties, responsible for extending bond issue taxes, be made parties defendant; and that the bond proceeds be used to retire the bond issue and the bond tax levy be abated to such amount as might be necessary to pay interest and expenses of the retirement of the bond issue or in the alternative that the tax levy for payment of interest and principal on the bonds be extended over the entire territory of each defendant district in the same proportion as the bond proceeds might be distributed.

Thereafter, leave to intervene was again denied, and a final order was entered in the principal action, the docket entry being: "Petition for leave to intervene denied. Prayer of complaint allowed as per stipulation. See order." Pursuant thereto, the written order or decree of the court, disposing of the interpleader action on its merits, directed that the proceeds of the Hindsboro District bond issue be distributed to the defendant districts in accordance with the percentages set out in the complaint as detailed above.

The following diagram, not purporting to be geographically accurate in any respect, illustrates the division of the six old districts, shown in dotted outline, among the three new districts, shown in solid outline, and in particular the inclusion of part of the old Hindsboro District in each of the districts which are the defendants in the principal suit.

446

CHARLESTON

ARCOLA

DISTRICT
(12.6%)

HINDSBORO
(51.7%)
DISTRICT

OAKLAND

DISTRICT
(35.6%)

DISTRICT

Petitioners-to-intervene thereupon took a direct appeal to the Supreme Court from the order of the circuit court *"denying the petition for leave to file tax-payers' intervening petition."* Before the Supreme Court, the petitioners attempted to raise questions which that court found "properly relate to the final decree entered by the trial court" in the interpleader action to which petitioners were not parties and from which they accordingly had no standing to appeal. In transferring the cause to this court the Supreme Court stated: "the only issue properly involved in this ap-

447

peal is whether or not the trial court erred in denying the right to file the intervening petition." (*Strader v. Board of Education, supra,* at page 613.)

For reversal petitioners urge that the circuit court erred in denying leave to intervene, and to file their petition to intervene, in denying them leave to be made parties defendant on behalf of themselves and others similarly situated, in refusing to make the County Clerks parties, in refusing to order the bond proceeds impounded and the tax levy partially abated, and finally, in refusing to order the extension of the tax levy over the territory of the defendant districts.

 Only the three defendant districts have appeared as appellees, urging in their joint brief that the petition to intervene was properly denied. In support of this position defendants point out that the right to intervene is not absolute (*Robertson v. Farmers State Bank of Danforth,* 311 Ill. App. 353; *Hairgrove v. City of Jacksonville,* 366 Ill. 163), that the question whether or not a party should be allowed to intervene is largely in the discretion of the trial court, and that its holding in regard thereto will not be disturbed unless clear abuse is shown. (*Toman v. Tufts,* 323 Ill. App. 516; *Town of Centreville v. Deckard,* 322 Ill. App. 9.)

More specifically, it is argued that intervention by these petitioners is inappropriate because: (1) Petitioners do not have such a direct interest in the subject matter of the suit as warrants intervention (*Wightman v. Evanston Yaryan Co.,* 217 Ill. 371); (2) A full and complete determination of the issues can be had in the principal suit without petitioners being parties (*Hairgrove v. City of Jacksonville, supra*); (3) Subject to certain qualifications, the parties to a suit have the right to proceed free from interference by others and accordingly an intervenor must take the suit as he finds

448

it, may not contest plaintiff's claim against defendant, change the issues or raise new ones, or change the form of procedure. Finally, it is contended that petitioners do not properly represent a class of persons similarly situated and therefore may not intervene in behalf of the taxpayers of the old Hindsboro District.

The first two of these points are interrelated and will be taken up together. As to the interest which will entitle one not originally a party to a suit to intervene therein, the general rule has been stated in various forms. It has been held that "the intervening party must have an interest in the subject matter involved which may be adversely affected unless he is made a party." (*Bossert v. Granary Creek Union Drainage District*, 307 Ill. 425.) A different formulation of the rule announced in *Wightman v. Evanston Yaryan Co., supra,* is as follows: "The interest which will entitle a party to intervene must be an interest in the matter about which the litigation is to be, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment—that is, the interest must be one created by a claim to the demand of property in suit, or some part thereof, or a lien upon the property, or some part thereof, which is the subject matter of litigation."

It has also been stated in numerous decisions dealing with the question of intervention that "The authority of a court to permit a person not made a party to a suit to intervene and be made a party exists only when a full and complete determination cannot be had without such person being made a party." (*Bossert v. Granary Creek Union Drainage District, supra; Hairgrove v. City of Jacksonville, supra.*)

In *Hartzell v. Hungate*, 223 Ill. App. 346 (petition for certiorari dismissed), relied on by petitioners,

449

this court held that "wherever a person has such an interest in litigation that he would have a right to bring suit to enforce that interest, he may intervene to protect that interest in a suit begun by others where the result may be prejudicial to it."

It would appear that in all but exceptional cases the foregoing rules are in effect equivalent. Thus a "full and complete" determination of a suit cannot ordinarily be had if the holder of a "direct and immediate" interest therein is not a party thereto, and conversely. Similarly, if one has such an interest that he could maintain a separate action to protect it, the interest would appear to be sufficiently "direct and immediate" to warrant intervention in the principal suit by the interested party so that a "full and complete determination" of the matter might be had in one action.

■■ The petitioners in the instant case are taxpayers of the old Hindsboro District. As such it is clear they have no direct legal interest in the bond proceeds or generally in any of the property belonging to the school districts in which they now are or formerly were located. It is just as clear, however, from consideration of the factual situations in the decisions announcing the foregoing rules that legal title to the subject matter of the litigation need not be established or claimed as defendants seem to suggest.

The interest of the petitioner in *Hartzell v. Hungate, supra,* was that of a taxpayer who would stand to benefit through reduction in the amount of his taxes if he prevailed in the litigation involved in that case. It there appeared that a decedent's estate had been left in trust, the income therefrom to be used for the support of a free school in a certain city. The executor of the estate and the mayor and council of the city, by bill in chancery, sought authorization to sell or encumber trust assets to pay outstanding indebtedness, and

named as defendants the tenants of certain real estate which was a part of the trust. In these circumstances it was held that the taxpayer might, by bill in chancery, have restrained misappropriation of the trust fund and that it was accordingly error to deny him leave to intervene and to file his proposed intervening petition alleging general mismanagement of the trust estate, praying that a receiver of the trust be appointed, and that the plaintiff executor be denied the right to sell real estate included in the trust in direct violation of the express terms of the will creating the trust.

 In determining whether the interest of the petitioner is sufficient, the allegations of the proposed intervening petition are to be taken as true in conformity with the practice relating to motions to strike pleadings. (*Hartzell v. Hungate, supra;* 67 C. J. S. 1015.) Analysis of the petition in the instant case shows that the interest of petitioners is substantially the same as that of the petitioner in the *Hartzell* case. The proposed intervening petition alleges that the bond issue proceeds in question may not lawfully be distributed to the three defendant districts or be used for any purpose other than that for which they were originally intended, which purpose can no longer be accomplished. Assuming these allegations to be true, it would appear, as in the *Hartzell* case, that the taxpayers of the old Hindsboro District will either directly or indirectly, be relieved of a substantial part of the burden of the tax levied for retirement of the bonds.

 In addition it is alleged, as a matter of law, in the proposed petition that distribution of the bond proceeds, for payment of which the Hindsboro District is indebted, may not be made without first setting off the amount of the bonded indebtedness. In support of this contention it is urged upon argument that, at the time the Hindsboro District was dissolved, section

451

4—47 of the School Code, upon the purported authority of which the trial court ordered distribution of the funds, provided in effect that "bona fide" debts of the old district shall be deducted before distribution is made of its assets. If this provision of the statute, as then in force, is applicable, and if *People ex rel. Miller v. Dannenbarger,* 217 Ill. App. 523, holding that bonded indebtedness is such a "bona fide" debt, is in point, petitioners' claim of interest is amply substantiated for purposes of the present inquiry. In any event it is well established that the question whether the petitioners' rights are such as to prevail is not in issue in connection with the question of sufficient interest (*Bachellor v. Dockterman,* 291 Ill. App. 418; 67 C. J. S. 1006), and it is not the intention of this court to depart from this rule or to express any opinion as to the question whether the intervening petition states a cause of action or as to questions of law related thereto.

■■■■■■ Further in support of the contention that a full and complete determination of the principal action can be had without intervention, it is urged by defendants that petitioners and each of the taxpayers of the old Hindsboro District are now taxpayers of one of the defendant districts and as such are represented by the district in which they now reside. It is pointed out, moreover, that the Oakland District, by its answer and counterclaim, requested that the funds in question be used for payment of the bond issue so that there was no need to permit petitioners to intervene to seek the same relief. This line of argument is untenable. While it is true that the taxpayers of the old Hindsboro District, including petitioners, are represented in the principal action by that one of the three defendant districts wherein they now reside, they are so represented as members of the new district and *not* as taxpayers of the old Hindsboro District. The

452

fundamental conflict in interest between the Hindsboro District taxpayers and the new defendant districts, of which the Hindsboro District is now a part, is apparent on the face of the pleadings. If the bond issue proceeds are to be distributed between the three new districts, it is presumably true that each of the former Hindsboro District taxpayers is interested in seeing that the new defendant district, in which he now resides, obtains, if not as large a share as possible of those proceeds, at least its fair share. To that extent the interests of the former Hindsboro District taxpayers are divergent among themselves and consonant with the interests of the other taxpayers of the new districts where they now reside. Their overwhelmingly greater material interest, however, is as taxpayers of the old Hindsboro District, liable for payment of a tax sufficient in amount to retire the bonds. As such, their primary interest lies in preventing any distribution of the bond proceeds to the defendant districts with a view toward relief from the tax levy. In the face of these facts it cannot be seriously contended, as defendants do, that petitioners are fully represented by the defendant districts and have no standing to intervene as taxpayers of the old Hindsboro District because there is no longer any such district.

 That petitioners could not be, and in fact were not, adequately represented by any of the defendant districts appears confirmed by the sequence of events in the trial court, all of which must have been apparent to the court at the time leave to intervene was denied. If the Oakland District in any manner pressed its counterclaim seeking retirement of the bond issue the record fails to so indicate. Moreover, while there is no suggestion whatever of collusion among the defendants as to the counterclaim and while the decree of the trial court on the merits does not appear to have been

entered by express consent of the parties, it apparently became essentially a consent decree when the defendant districts stipulated as to the percentages in which distribution should be made and leave to file the intervening petition was denied.

For the reasons indicated, it is the opinion of this court that the petitioners do properly represent that class of persons constituting the taxpayers of the old Hindsboro District and that leave to file the proposed intervening petition could not have been properly denied them individually or as representatives of that class upon any of the grounds urged by defendants and so far considered.

In connection with the foregoing as well as the remaining questions, an examination of the practice and procedure in intervention proceedings is in order. Under the usual practice in the courts of this State, a person seeking to intervene customarily files his "petition for leave to intervene" and attaches thereto a copy of his proposed "intervening petition." Of necessity, the facts demonstrating the petitioner's interest in the subject matter of the principal suit must appear either in the petition to intervene or in the proposed intervening petition, as discussed above. In addition, the proposed intervening petition contains the petitioner's allegations as to the subject matter of the principal suit and his prayer for relief in regard thereto. Thus it is apparent that the proposed intervening petition is a pleading similar in nature to a complaint or answer. Whether it is one or the other, or partakes of the nature of both, depends upon the position which the petitioner takes in regard to the subject matter of the principal suit. It appears well settled that the petitioner may simply adopt the complaint or answer in the principal suit or in the alternative, he may, within limits hereinafter considered, add

454

allegations to the complaint or answer, or he may oppose both the plaintiff and the defendant in an appropriate case.

Upon the filing of such petition to intervene with proposed intervening petition attached, it appears that the sufficiency thereof may be questioned or tested along three independent lines by appropriate action of the parties to the principal suit. Thus the question may be raised, ordinarily by motion to strike the petition for leave to intervene, whether the petitioner has shown sufficient interest in the subject matter of the principal suit to entitle him to intervene. This the petitioner must have in any case and accordingly an order denying leave to intervene because of insufficient interest is, without more, a final determination that intervention is not allowable.

 In the instant case, this question has already been resolved in favor of the petitioners. There remains, however, to be disposed of as a separate question the third line of argument urged by defendants which is, in substance, that intervention was properly denied because petitioners were attempting to raise new issues which would have delayed the trial. This, it has been repeatedly stated, an intervenor may not do. By the same authority he must "take the suit as he finds it (and) is bound by the record of the case at the time of his intervention. He cannot . . . raise an issue as to the formality of the pleadings or the regularity of the procedure in the principal cause (or) insist upon a change in the form of procedure nor delay the trial of the action." (See *Wightman v. Evanston Yaryan Co., supra.*) In the opinion of this court it is of basic importance to keep sight of the fact that the fundamental purpose of these rules is to expedite litigation. That the rules are not sufficient unto themselves but are to be applied with that objective in view,

seems implicit in the repeated statement that the question of intervention is a matter for the trial court's discretion, and that intervention will be granted or denied depending upon the circumstances surrounding each case and the rules applicable thereto. (*Hairgrove v. City of Jacksonville, supra.*) Less frequently recognized, but in this court's opinion of at least equal importance, is the fact that the ultimate reason for allowing intervention is the same, i. e., to expedite litigation by disposing of the entire controversy among the persons involved in one action, and so to prevent multiplicity of actions. (See 67 C. J. S. 993.) Inevitably, in certain circumstances, expeditious settlement of a *particular* action must give way to reasonable delay to avoid the still greater delay of multiplicity of suits.

As a procedural matter, whether a proposed intervening petition is obnoxious to any of the foregoing specific rules limiting the right to intervene may be tested by motion to deny leave to file the proposed petition, even though the petitioner is sufficiently "interested." It is important to note, however, that such a motion raises only the question whether leave to file the *particular* proposed petition should be denied because it raises questions which would unduly interfere with and so delay the principal action. Such a motion does not necessarily raise the question whether leave to intervene should be denied at all events. Thus, even though the particular petition is stricken on motion, the possibility remains that petitioner may so amend his intervening petition as to avoid raising questions or issues which would unduly interfere or delay.

The extent to which an intervening petitioner may alter the issues, received the attention of the Supreme Court in the leading case of *Hairgrove v. City of Jacksonville, supra.* In that case a taxpayer sought an injunction to restrain the City from issuing mortgage

certificates for construction and operation of an electric light plant. The petitioner to intervene sought to show that the plaintiff did not bring suit in good faith, and in addition attempted to raise issues not in the original complaint and to bring in new parties defendant only as to the additional issues. The court specifically found that the petitioner "disclaimed any desire to join as party plaintiff unless . . . granted (leave) to add such additional allegations and make additional parties defendant." In holding that, in these circumstances, the trial court did not err in denying the petitioner's motion to intervene, the Supreme Court announced the rule relied on by defendants here, that a petitioner to intervene "is bound by the record of the case at the time of his intervention . . . (and) may neither change the issues between the parties nor raise new ones."

The court further remarked as follows:

"As we understand the record, this appellant was not denied the right to be made a party plaintiff, to adopt the pleadings of the original plaintiff, or to make such amendments thereto as would not create new issues or bring in new parties."

In the context it seems clear that the court's decision would have been different if an opportunity to intervene on the conditions stated had not been accorded the petitioner. The application, in specific circumstances, of the rule as to new issues announced by the court is not, however, clear because it is difficult to conceive how the petitioner might amend the complaint without, in some sense, raising new issues.

 However this may be, it is evident that a petitioner to intervene is not confined merely to adoption of the pleadings of one or the other of the parties to the principal suit.

457

In this court's opinion this conclusion is confirmed, and the scope of the *Hairgrove* rule clarified, by the subsequent decision of the Supreme Court in *People ex rel. Sandberg v. Grabs,* 373 Ill. 423, not relied on by any of the parties. That case arose upon a *quo warranto* proceeding and the court seemingly distinguished the intervention rule applicable in such an action from that announced in the *Hairgrove* case. However, in the course of its decision, the court remarked: "It is no objection to intervention that the intervenor may oppose both parties," citing 20 R. C. L. 683. So far as appears from the context of the decision and from the reference cited, this rule is applicable to intervention proceedings generally and is not confined merely to intervention in *quo warranto.*

Moreover, in the *Grabs* case, in response to the argument that the petitioners to intervene should not have been permitted to change the issues and bring in new parties, the court remarked:

"It cannot be doubted that an intervening petition which seeks to strike at the very existence of the office over which the original parties are contending is germane to a *quo warranto* proceeding instituted on behalf of the public. Section 25 of the Civil Practice Act which applies to *quo warranto* proceedings provides: 'Where a complete determination of the controversy cannot be had without the presence of other parties, the court may direct them to be brought in. Where a person, not a party, has an interest or title which the judgment may affect, the court, on application, shall direct him to be made a party.' Statutes such as this have been liberally construed to authorize courts to bring before them all persons necessary to a complete determination of the matters involved and to the granting of appropriate relief. (20 R. C. L. 684)."

The significance of these observations for the instant case becomes apparent upon reference back to the *Hairgrove* decision. There the court had re-affirmed the construction of section 25 of the Civil Practice Act [Ill. Rev. Stats. 1951, ch. 110, § 149; Jones Ill. Stats. Ann. 104.025] announced in *Bernero v. Bernero,* 363 Ill. 328, where it held that this section "says nothing about intervention, and, so far as we can see, adds nothing to the existing law on that subject." It seems clear that, by this remark, the court did not intend to hold that section 25 was *inapplicable* in either case but rather that it could not be *construed* to permit intervention by the petitioners in the circumstances existing in those cases. Accordingly no reason appears why that section, together with the construction placed upon it in the *Grabs* case, is inapplicable here.

Re-examination of the facts in the *Hairgrove* case, in the light of the foregoing, serves to make substantially more definite the meaning of the rule as to new issues stated in that case. There, the petitioner, a utility company, sought to intervene and amend the complaint to allege that it held a franchise to supply electric service in the City of Jacksonville, that under the terms of a contract between the City and the Administrator of Public Works, which was one of the defendants sought to be added, the latter had agreed to make a loan to the City, and that the City in entering into such contract had exceeded its powers. This contract had apparently been made in aid of the City's plan to establish a municipal electric plant. So far as appears, the complaint in the principal suit, did not question the underlying power of the City to establish such a plant but did question its authority to exercise the power under an allegedly invalid ordinance. Neither did the petitioner question that power. Accordingly, the ques-

tion which the petitioner attempted to raise was completely separate from and unrelated to any question raised in the principal suit because the petitioners' question would have remained, not only undecided, but completely unaffected by decision either way in the principal action, and conversely. That is, whether the ordinance was found to be valid or invalid would apparently have had no effect whatever upon the question of the City's power to contract in the manner challenged. Similarly the question of the City's power to enter into the loan agreement did not depend in any manner upon the validity of the ordinance.

This obviously was not true in the *Grabs* case and is not true here. There, the petitioners challenged the very existence of the office in question. Here, the petitioners challenge the power and authority of the plaintiffs to make distribution, in any manner, of the funds in question to the defendants without modification of the tax levy. The petitioners cannot and do not pretend to seek abatement of the tax levy unless it is first determined that distribution of the bond proceeds may not be made to the three defendant districts. Alternatively, they cannot and do not pretend to ask that the burden of the levy be extended to the defendants unless it is first decided that funds are to be distributed to them.

That the issues in the instant case were inextricably interrelated with those raised by the proposed petition becomes even more apparent upon comparison of the proposed petition with the pleading of the Oakland District.

■ The prayer for relief of the proposed intervening petition seeks in the alternative: 1. Retirement of the bond issue by use of the sale proceeds and partial abatement of the tax levy; 2. Extension of the tax levy over the entire territory of the defendant districts

if the bond proceeds are so distributed. The first of these alternatives, so far as it seeks retirement of the bond issue out of the funds now in plaintiff's hands, is virtually identical with the prayer for relief contained in the Oakland District pleading. Partial abatement of the tax levy, also sought under the first alternative prayer, is not specifically mentioned in the Oakland District pleading. However, in the opinion of this court, this additional relief, sought under the first alternative prayer, is within the scope of the general prayer for relief contained in the Oakland District pleading and therefore does not raise an additional issue within the meaning of the rule as laid down in the *Hairgrove* and *Grabs* cases. This conclusion follows from the fact that the controversy concerning the Hindsboro bond issue could not have been resolved merely by retirement of the bond issue through use of funds now in plaintiff's hands as prayed in the Oakland District pleading. To so retire the bond issue without more would leave outstanding the tax levy upon the property in the Hindsboro District. A completely anomalous situation would then obtain. Only a small portion of the levy would be necessary to pay interest and expenses of retirement of the bond issue. To what lawful purpose the balance of the tax money could be put does not appear. Accordingly, it is this court's opinion that an order or decree directing that the bond proceeds and accumulations now on hand be used to retire the bond issue, as specifically prayed by the Oakland District, and in addition, under its general prayer for relief, abating the tax levy to such an amount as might be necessary to assure retirement of the bond issue would have been fully within the scope of the general relief prayed by the Oakland District. As this is the relief sought by petitioners under their first alternative prayer, it necessarily follows that, so

far as that prayer for relief and the allegations of the proposed petition in support thereof are concerned, no issues are raised which are new or foreign to the issues existing between the plaintiff and defendant at the time petitioners sought to intervene.

In the opinion of this court the same conclusion is true as to petitioners' second alternative prayer and, in fact, as to any other prayer which might be made for disposition of the funds in plaintiffs' hands, such as, for example, that the tax levy be left outstanding and that the funds in question be distributed to the taxpayers of the old Hindsboro District in proportion to their tax assessments.

As has already been noted, the *Hairgrove* decision is apparently based in part upon the Supreme Court's conclusion that, in the circumstances there existing, the petitioner should not be allowed to insist upon bringing in additional parties defendant. As the instant case is to be distinguished upon its facts, in the manner indicated above, this rule is inapplicable here. Even if it is assumed that an intervenor may not, as a matter of right, insist that additional parties defendant be joined, it is well established, under section 25 of the Civil Practice Act (Ill. Rev. Stat. 1951, ch. 110, par. 149), that if a lack of parties is brought to the court's attention it should not proceed further until the omission has been corrected, even though no objection is made by any party litigant (*Oglesby v. Springfield Marine Bank,* 385 Ill. 414). In the case cited it was also held that the interest of absent parties must be determined by the issues presented by the pleadings and the evidence and that the mere fact the court decides the issues in such a way that the absent parties would have no interest does not control. Taking the allegations of the proposed intervening petition in the instant case as true and the relief sought as appro-

priate, the County Clerks whom petitioners sought to have joined are necessary parties. The interest of the Clerks arises, however, only in connection with the question whether the bond issue tax levy is to be modified which, in turn, as already discussed at length, depends upon the prior question as to disposition of the proceeds of sale of the bonds. It is apparent that the Clerks are not interested as to all the relief prayed for and their position in this litigation clearly appears to be that contemplated in section 24 (2) of the Civil Practice Act [Ill. Rev. Stats. 1951, ch. 110, § 148, subd. (2); Jones Ill. Stats. Ann. 104.024, subd. (2)] which provides:

"It shall not be necessary that each defendant shall be interested as to all the relief prayed for, or as to every cause of action included in any proceeding against him; but the court may make such order as may be just to prevent any defendant from being embarrassed or put to expense by being required to attend any proceedings in which he may have no interest."

It is this court's opinion that the foregoing conclusions are not only fully consonant with the authorities discussed above but manifestly in keeping with the primary purpose of intervention which has also been noted. The proposed intervening petition raised primarily questions of law, some of which are implicit in and others of which are in addition to those existing at the time intervention was sought. For the reasons indicated, however, none of these issues is to be regarded as new or additional or foreign. So far as appears, there would have been little, if any, additional evidence to be taken under the proposed petition. Such legal questions as were raised should have been largely disposed of by appropriate motion, causing relatively little delay. Of overwhelmingly greater practical importance, and it is with practicalities with which inter-

463

vention seeks to deal, is the fact that if intervention were denied there can be but little doubt that further litigation would ensue. Presumably all parties to this action would be necessary parties thereto. Substantially the same evidence and the same questions would be presented in addition to those relating to the tax levy.

 Finally, even though the foregoing issues are resolved in petitioner's favor and an order is accordingly entered granting leave to intervene and granting leave to file the proposed intervening petition, it may be questioned whether the allegations of the petition are sufficient to state a cause of action, which may be tested by motion, in the usual form, directed to the sufficiency of the pleading. Similarly, whether the allegations of the proposed intervening petition sustain either of the alternative forms of relief which petitioners specifically sought, or which they may seek, may be tested by motion or answer. (Civil Practice Act, section 34; Ill. Rev. Stat. 1951, ch. 110, par. 158 [Jones Ill. Stats. Ann. 104.034].)

In the course of this litigation it does not appear that any motions whatever, either oral or written, were presented by any of the parties to the principal action, nor was any argument heard, directed toward the sufficiency of the petition or any part thereof on any ground. Indeed, the only indication that the intervention of petitioners was resisted in any manner, is contained in the oral statements to the court of counsel for certain of the defendants, made on the date set for hearing when the *original* petition for leave to intervene was denied. Moreover, the only matter in the record indicating the disposition made of the second petition for leave to intervene is the docket entry noted above which simply recites: "Petition for leave to intervene denied." Accordingly, the specific grounds,

464

if any, upon which the petition was attacked and denied nowhere appear.

 Finally, as noted above, the notice of appeal states that the appeal is taken from the order of the circuit court "denying the petition for leave to file taxpayers' intervening petition," and the Supreme Court has found that the only issue properly involved is whether the trial court erred in so doing. There is, in fact, no such order in the record. It is clear that the docket entry denying leave to intervene necessarily carried with it denial of leave to file the intervening petition. It is completely unclear, however, on what ground the denial was based and it has accordingly been found necessary to review the possible grounds as presented in the briefs on appeal.

For the reasons indicated it is the opinion of this court that leave to intervene should have been granted, and also leave to file the proposed intervening petition. As should be clear from the foregoing, no opinion whatever is expressed as to the intervening petition on its merits, nor as to the several questions of law argued in the briefs of the parties on appeal which might be raised by motion to strike the intervening petition on the ground that it fails to state a cause of action as a matter of law, nor as to the question whether the intervening petition sustains the relief prayed.

The judgment is reversed and the cause remanded with directions to grant leave to intervene and to file the proposed intervening petition.

*Reversed and remanded with directions.*