LAKE STATES ENGINEERING CORPORATION, Plaintiff and Counter-defendant-Appellee, v. ONE NAPERVILLE CORPORATION, Defendant and Counterplaintiff-Appellee (Testing Service Corporation *et al.*, Counter-defendants-Appellees; Lake States Engineering Corporation, Third-Party Plaintiff-Appellee; Testing Service Corporation, Third-Party Defendant-Appellee; Colonial, Inc., Intervenor-Appellant).

Second District   No. 85—0682

Opinion filed October 20, 1986.

Benjamin P. Hyink and Paul T. Falk, both of Drugas, Morgan & Hyink, of Chicago, for appellant.

No briefs filed for appellees.

JUSTICE STROUSE delivered the opinion of the court:

This action was brought by Lake States Engineering Corporation (Lake States) on the basis of a construction contract with One Naperville Corporation (ONC). Colonial, Inc. (Colonial), a joint-venture partner of ONC, sought to intervene to protect its interest. Leave to intervene was denied. Colonial appeals from the denial.

Colonial and ONC entered into a joint-venture partnership agreement to purchase and develop real estate (hereinafter referred to as the property). The joint venture's primary purposes included: (1) acquiring the property; (2) financing and constructing an office building on the property; and (3) operating, leasing, managing, maintaining, or selling the improved property. Colonial and ONC each own a 50% interest in the profits of the joint venture.

ONC had the authority on behalf of the joint venture to obtain satisfactory agreements with contractors for the development of the property. ONC, under the joint-venture agreement, had no authority, unless agreed to in writing by Colonial, to commence any legal action to enforce the rights of the joint-venture partners. Colonial has never given its permission to ONC to represent the joint venture in this action. ONC had the obligation under the joint-venture agreement to maintain, or cause to be maintained, the project in a reasonable and prudent manner.

On or about December 1, 1982, Lake States entered into a contract with ONC wherein Lake States agreed to install concrete caissons. On January 28, 1983, ONC entered into a supplemental contract with Lake States wherein Lake States agreed to drill the caisson shafts beyond the original contract depth. On or about December 3, 1982, ONC entered into an oral contract with TSC Corporation (TSC) wherein TSC agreed to perform construction services.

On September 9, 1983, Lake States filed this action against ONC alleging that ONC had failed to pay Lake States $23,316.38 for work performed pursuant to their contract. Various claims and counterclaims have been made in subsequent pleadings. Thereafter, on April 22, 1985, ONC filed a counterclaim against both Lake States and TSC. In count I, ONC alleged that Lake States breached its contract by installing caissons with irregular shafts and incomplete "bells," which caused the foundation problems of the property. In count II, ONC alleged that Lake States concealed and suppressed known defects and deficiencies in the caissons. In count III, ONC alleged that TSC breached its oral contract with ONC by improperly supervising

the caisson construction and improperly performing engineering tests.

Lake States filed a six-count amended third-party complaint against TSC on August 9, 1985. Lake States alleged that it relied on soil tests performed and recommendations made by TSC before filling the caisson shafts with concrete. Lake State's third-party complaint contains one count for active-passive indemnity and one count for contribution for each of the two counts directed against it by ONC. In counts V and VI, Lake States sought to recover against TSC on a third-party beneficiary theory should ONC recover against Lake States.

To date, the only discovery completed were interrogatories answered by Lake States. No depositions have been taken.

After the original complaint was filed by Lake States against ONC, Colonial believed that the joint venture's interests in this lawsuit were being represented by a law firm. However, Colonial never received any status report concerning this lawsuit and did not learn of the status until sometime in February of 1985. At that time Colonial learned that ONC was pursuing this lawsuit on its own behalf and not on behalf of the joint venture.

On March 27, 1985, Colonial filed a motion to intervene, memorandum in support of that motion, and proposed complaint. Colonial alleged that it should be allowed to intervene as of right. Colonial initially argued that it had filed a timely motion to intervene and that the trial court had not determined any major issues between the original parties. Colonial also argued that the existing parties did not adequately represent Colonial's interests because: (1) Colonial has a unique interest in determining whether the damage to the caissons resulted from the breach by ONC of its contractual obligation to use reasonable care to supervise the caisson construction; (2) the relationship between Colonial and ONC had deteriorated such that a reasonable person in Colonial's position would not rely on ONC to represent its interest; and (3) counsel for ONC had represented Colonial's adversaries in other lawsuits arising from this same joint-venture relationship. Finally, Colonial alleged that as a joint-venture partner, Colonial will or may be bound by a judgment entered against ONC because each member of a joint venture is liable for contracts entered into by any other members of the joint venture.

The proposed seven-count amended complaint, filed March 15, 1985, alleged a breach of the joint-venture agreement, negligent supervision of Lake States and TSC, negligent installation of the caissons, use of inferior materials in the caissons, and lack of care in performing soil-bearing-capacity tests. The proposed complaint also

added James Popp and Carolyn DePhillips, individually and doing business as Drafting & Construction Services, for negligent supervision.

On April 22, 1985, ONC filed a motion to strike the motion to intervene. ONC argued that Colonial was not in privity of contract and could not allege an independent tort or contract theory against Lake States or TSC. ONC also alleged that there were numerous claims between Colonial and ONC which would unduly hinder and delay trial. The trial court stated that if Colonial should be granted leave to intervene, Colonial could not raise new issues or add new parties and Colonial could not pursue any individual actions against any parties to this lawsuit. The trial court was primarily concerned that any differences between the joint-venture partners, ONC and Colonial, not be litigated in this action. In an order dated April 30, 1985, the trial court granted Colonial leave to intervene, so long as Colonial raised no new issues or parties, and leave to file a proposed complaint and additional authority in support. Colonial argued that it only sought to add new issues and parties that were directly related to the underlying facts that gave rise to the lawsuit, which the legislature clearly intended, and that it would not cause delay but would in fact avoid the greater delay caused by multiple suits.

On June 18, 1985, in a hearing on Colonial's motion to intervene, TSC and Lake States argued that it would be advantageous to allow Colonial to intervene so that a court in one proceeding could resolve all disputes involving the caisson construction rather than expose them to multiple depositions and litigation. The court again stated that Colonial would have leave to intervene as long as Colonial did not add new parties and issues. The court also indicated that Colonial would not be given the right to pursue its contract claim against ONC. In the trial court's order dated June 18, 1985, the court denied Colonial's motion to intervene and leave to file its complaint but granted one final opportunity to intervene by an amended complaint which did not add new parties or raise new issues. Colonial elected to stand on its proposed pleading, and the court ordered that Colonial's petition for leave to intervene be denied.

Lake States and One Naperville have not filed briefs with this court; however, the issue raised will be addressed pursuant to *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128.

Colonial does not argue whether it has a right to intervene but that the trial court abused its discretion by denying its petition to add new issues and parties. Section 2—408(f) of the Code of Civil Proce-

dure states, in relevant part:

> "An intervenor *shall* have all the rights of an original party, *except* that the court *may* \*\*\* provide \*\*\* that the applicant shall not raise new issues or add new parties, \*\*\* as justice and the avoidance of undue delay may require." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 110, par. 2—408(f).

Colonial argues that the mandatory language in section 2—408(f), that an intervenor shall have all the rights of an original party, means that the drafters intended this to be the general rule and that a court may restrict those rights only as justice and the avoidance of undue delay may require.

■■■ A primary rule of statutory construction is to ascertain and effectuate the legislature's intent. In so doing a court looks first to the statutory language itself, and if the language is clear, the court must give it effect and not look to extrinsic aids for construction. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277.) It is also a rule of statutory construction that the word "may" is permissive or discretional as opposed to mandatory. (*Tague v. Molitor Motor Co.* (1985), 139 Ill. App. 3d 313, 318.) We believe that the plain language of the statute directs that a party shall be permitted to intervene upon certain conditions, which are subject to the trial court's discretion. Two of those conditions are the determination of whether the intervening party may add new issues or parties as justice and the avoidance of undue delay may require. We, therefore, must determine whether the trial court abused its discretion by refusing Colonial's petition to add new issues and parties.

■ A salutary purpose of intervention is to expedite litigation by disposing of the entire controversy among the parties involved in one action to prevent a multiplicity of actions. (*Home Insurance Co. v. Lorelei Restaurant Co.* (1980), 83 Ill. App. 3d 1083, 1086.) "Inevitably, in certain circumstances, expeditious settlement of a *particular* action must give way to reasonable delay to avoid the still greater delay of multiplicity of suits." (Emphasis in original.) *Strader v. Board of Education* (1953), 351 Ill. App. 438, 456.

■ The extent to which an intervening petitioner may alter the issues is contemplated by the general rule that an intervenor must take the case as he finds it and the proceedings cannot be changed by introducing new matters not relevant to the controversy or which unduly complicate it. (*E.g., Home Insurance Co. v. Lorelei Restaurant Co.* (1980), 83 Ill. App. 3d 1083, 1087.) The key word here is relevancy. We believe that the trial court, in exercising its discretion, should admit the issues and parties which are inextricably interrelated

with those raised in the original suit.

In *Strader v. Board of Education* (1953), 351 Ill. App. 438, the trial court had denied the taxpayers of a former school district the right to intervene in an action to decide the proper distribution of assets between new school districts. The defendants argued that the trial court denied the petition to intervene because the petitioners were attempting to raise new issues and parties which would have delayed trial. (351 Ill. App. 438, 448-49.) The appellate court reversed and held that the questions which the petitioners attempted to raise were so interrelated to questions raised in the principal suit that the decision would affect the outcome. (351 Ill. App. 438, 460.) The court also held that new parties could be added for the same reasons, although they were not interested as to all the relief prayed for. (351 Ill. App. 438, 462-63.) The court stated:

> "[T]he foregoing conclusions are not only fully consonant with the authorities discussed above but manifestly in keeping with the primary purpose of intervention which has also been noted. The proposed intervening petition raised primarily questions of law, some of which are implicit in and others of which are in addition to those existing at the time intervention was sought. For the reasons indicated, however, none of these issues is to be regarded as new or additional or foreign. So far as appears, there would have been little, if any, additional evidence to be taken under the proposed petition. \*\*\* Of overwhelmingly greater practical importance, and it is with practicalities with which intervention seeks to deal, is the fact that if intervention were denied there can be but little doubt that further litigation would ensue. Presumably all parties to this action would be necessary parties thereto. Substantially the same evidence and the same questions would be presented \*\*\*." 351 Ill. App. 438, 463-64.

Colonial's proposed complaint challenges the very core of the original parties' complaints: the dispute over responsibility for the improper installation of the caissons. The prayer for relief is within the scope of the general prayer for relief contained in the original pleadings and therefore does not raise an additional issue within the meaning of the general rule. This follows from the fact that the controversy concerning the caisson issue could not have been resolved merely by settling the original complaints.

■ That the issues are interrelated is readily apparent. For example, Colonial could bring a separate action against ONC, Popp and DePhillips, individually and doing business as Drafting & Construction

Services (Drafting & Construction), for breaching the joint-venture agreement by negligently supervising Lakes States and TSC. As a joint venturer, a partner may maintain an action against a co-partner before there has been a settlement of the partnership if the claim can be decided without a full review of the partnership accounts. (*Balcor Income Properties, Ltd. v. Arlen Realty, Inc.* (1981), 95 Ill. App. 3d 700, 702.) If Colonial brings this separate action, then ONC and Drafting & Construction could be forced to file third-party claims against Lake States and TSC since ONC maintains by its pleadings that Lake States and TSC caused the damage to the property. The parties would have to conduct the same discovery to determine who was ultimately responsible for damaging the property due to the improper installation of the caissons. Moreover, although Colonial's first proposed claim would involve some analysis of its partnership agreement with ONC, a court would not be required to review the entire agreement to determine whether ONC breached its alleged obligation by negligently supervising Lake States and TSC. In addition, the jury would decide many of the same issues. The only new issues goes to the question of who is at fault for the defective caissons, and this was the principal controversy existing between the original parties at the time Colonial sought to intervene.

The same reasoning is applicable to the new parties. Taking the allegations of the proposed intervening petition in the instant case as true and the relief sought as appropriate, the new parties Colonial sought to have joined are necessary parties to the issue of the defective caissons. The interest of the parties arises in connection with their responsibility to properly supervise the work of TSC and Lake States.

Other relevant matters should have been considered by the trial court in the exercise of its discretion, beyond the consideration of complicating the litigation. Here, there had been limited discovery, and the case was not set for trial. Permitting the intervention, therefore, would not delay the discovery or the trial. Moreover, Lake States and TSC both agreed that Colonial should have been allowed to intervene with the new issues and parties contained in the proposed complaint. Only ONC resisted the motion. Furthermore, such intervention would avoid a multiplicity of suits.

■ We find the trial court abused its discretion in denying Colonial the right to add new parties and issues. We stress on remand that the new parties and issues be limited only to the issue of the defective caissons. Other disagreements, including those arising from the joint-venture agreement between Colonial and ONC, should not be

844

included in Colonial's amended complaint.

Based on the foregoing, we reverse and remand the cause to the circuit court of Du Page County for further proceedings.

Reversed and remanded.

NASH, P.J., and WOODWARD, J., concur.