The People of the State of Illinois, ex rel. Jerry M. Henderson, George R. Kelley, Otto H. Laesch, Lester T. Cornick, Lander Van Gundy, Robert D. Forbes and Ellis Wade, Plaintiffs-Appellees, v. City of Bloomington, Illinois, School District No. 87, County of McLean and State of Illinois, and The Board of Education of the City of Bloomington, Defendants-Appellants.

Gen. No. 10,400.

Third District.

October 22, 1962.

Rehearing denied December 11, 1962.

DePew & DePew and Pratt, Heffernan & Ramseyer, of Bloomington (Joseph W. DePew and John T. Pratt, of counsel), for appellants.

Dunn & Dunn, of Bloomington, for appellees.

CARROLL, J.

This is a quo warranto proceeding brought on the relation of certain owners of real estate, residents and taxpayers of Community Unit School District No. 5 of McLean and Woodford Counties, Illinois, to test the validity of the annexation to the City of Bloomington and to School District No. 87, McLean County, of property owned by the General Electric Company.

The Circuit Court of McLean County heard the matter on the pleadings and a written stipulation of facts and entered judgment for the plaintiffs, holding that they had the requisite interest to maintain the action and that at the time of the adoption of the annexation ordinance the premises therein described were not contiguous to the City of Bloomington and as a result such ordinance was void.

Sec 10, Chap 112, Ill Rev Stats 1959, provides that a quo warranto proceeding may be brought in the name of the people "by any citizen having an interest in the question on his own relation . . ." defendants contend on this appeal that plaintiffs, as private citizens fail to qualify as having the necessary interest to maintain such an action on their own relation because their interest in the question is one of possible increase in their taxes due to loss of the assessed valuation of the General Electric property and is

10

shared in common with all other residents of School District No. 5.

Plaintiffs are owners of real estate within district No. 5. The ordinance in question was adopted June 29, 1959, on which date the Board of Education of said district received bids for a new school building bond issue requiring $1,920,980.16 for complete payment. These bonds were sold and became a lien on August 4, 1959. On that date the assessed valuation of the General Electric property was $3,081,780 or 3.69 per cent of the total assessed valuation of $83,460,440 for all property in district No. 5. It follows that annexation of the General Electric property to district No. 7 would result in imposing liability for 3.69 per cent of the building bond issue upon plaintiffs and the other taxpayers of said district No. 5. It is apparent from the foregoing facts that annexation of the General Electric tract would result in the imposition on plaintiffs and other taxpayers of district No. 5 of liability for an amount equal to the share of the tax burden previously borne by General Electric. Prior to the decision in People ex rel. McCarthy v. Firek, 5 Ill2d 317, 125 NE2d 637, the Illinois Courts had held that the interest of a taxpayer was not sufficient to maintain a quo warranto proceeding. Rowan v. City of Shawneetown, 378 Ill 289, 38 NE2d 2; Adair v. Williams, 407 Ill 309, 95 NE2d 345. In the Firek case the Supreme Court overruled these two prior decisions and held that a taxpayer residing in a sanitary district has sufficient interest to maintain a quo warranto proceeding against the trustees of said district. In so holding, the Court said:

"Moreover, the interest of a citizen in the taxes to be collected from him is obviously distinct, for many purposes, from a general public interest in the enforcement of the law. It is a personal and substantial interest, and it does not become the less

11

so because other citizens have a similar interest. The decision in the Rowan case can thus be explained only on the assumption that the statute requires a citizen's interest to be unique, or at least uncommon. In view of the number of different local governmental units which may exist under our laws it cannot be assumed that public law officers will undertake to litigate every instance of allegedly invalid organization, annexation, disconnection and dissolution."

Defendants seek to avoid the effect of the Firek case by pointing out that in that case the plaintiffs were being unlawfully taxed by a sanitary district that had been previously dissolved, and that in the instant case the plaintiffs are residents and taxpayers of a school district in which they are being lawfully taxed. As a result, it is argued the interest of the plaintiffs is not personal to them but is common to the general public and any injury or damage to plaintiffs' rights of which they complain is to the general public. We think defendants in thus arguing overlook the fact that the court said in the Firek case that the interest of a citizen in the taxes to be collected from him "is a personal and substantial interest, and it does not become the less so because other citizens have a similar interest." Furthermore, it may be properly observed that all members of the general public do not pay school taxes. Those upon whom such taxes fall certainly do have a personal interest in the amount they are to pay.

We do not think the trial court erred in holding that the plaintiffs have the requisite personal interest to maintain a quo warranto proceeding.

■ The remaining question to be decided is whether the General Electric tract was contiguous to the City of Bloomington at the time the annexation ordinance was adopted.

Sec 7, Div 1 of Art 7, Chap 24, Ill Rev Stats, 1959, provides that "Any territory which is not within the

12

corporate limits of any municipality but which is contiguous to a municipality, may be annexed thereto as provided in this Article." There is no contention here that the annexation procedure followed did not conform to the statutory requirements. The General Electric tract which is designated as Tract 5 on the Plat accompanying the stipulation of facts, consists of 66 acres of land and lies East of and abuts upon the right of way of U. S. Route 66 (FA 5) which has been designated a freeway. The term freeway as defined in Art 2, Sec 2–212 of Ill Highway Code, Chap 121, Ill Rev Stats, 1959, is "A highway or street especially designed for through traffic, and to, from, or over which owners of or persons having an interest in abutting land or other persons have no right or easement or only a limited right or easement of access, crossing, light, air, or view by reason of the fact that such property abuts upon such highway or street or for any other reason." Also shown on the plat are 3 tracts of land on the west side of and abutting upon the freeway and which are designated as Tracts 1, 2 and 3. Tract 3 is directly opposite to Tract 5, Tract 2 adjoins Tract 3 on the south and Tract 1 adjoins Tract 2. Tracts 1, 2 and 3 were previously annexed by the City and the validity of such annexation is not challenged in this proceeding. The freeway right of way is marked Tract 4 on the Plat. Defendants concede that the City has never annexed the land within the right of way of U. S. Route 66. It thus appears that the strip of land constituting the right of way of the freeway is a common boundary between the City and Tract 5.

Defendants in contending that when it was annexed, Tract 5 was contiguous to the City within the meaning of the annexation statute rely primarily upon Spaulding School Dist. No. 58 v. Waukegan, 18 Ill2d 526, 165 NE2d 283 and In re Petition for Annexation of Lots to Flossmoor v. Mutual Nat. Bank, 23 Ill App2d

13

440, 163 NE2d 215. In the Flossmoor case the petition sought the annexation of lands contiguous to the Village of Flossmoor. One of the objections raised was that the territory sought to be annexed was not contiguous to Flossmoor because the west half of Kedzie Avenue was not in the territory and, therefore, it was a "corridor" which rendered the territory noncontiguous. The trial court approved the petition. On appeal the objectors relied upon Wild v. People ex rel. Stephens, 227 Ill 556, 81 NE 707; and People ex rel. Benjamin S. Adamowski v. Village of Streamwood, 15 Ill2d 595, 155 NE2d 635. In its opinion the Appellate Court points out that when the Court in the Wild case said, " 'The two last mentioned strips are not contiguous' because 'no vehicle, and in fact, no person could pass from one strip to another without passing over or upon lands not within the village.' But that language referred to two 'long narrow strips' whose purpose practically was to separate inhabitants and territory . . ." The court also observed that the decision in the Streamwood case rested on the view that the "purported annexation" of "a maze of roadways" was unreasonable and that the end sought in both Wild and Streamwood cases would be adverse to the fundamental theory that the territory of a city or village should not consist of separate or segregated areas. The court then expressed its conclusion in this language:

"In the Wild case the court thought that the statute should be construed liberally but that the word 'contiguous' must not be 'entirely disregarded.' And in the Streamwood case the court said that 'contiguous' as used in Sec 7–8 'must mean . . . in the sense of adjacent to and parallel to the existing municipal limits . . . .' This court, in a zoning case, decided on authority of Webster that 'adjacent' meant 'lying near, close or con-

14

tiguous'; that 'adjacent' and 'adjoining' were equivalents; and that one structure was 'adjacent to' another, though separated by an alley. Schwartz v. Congregational Powolei Zeduck, 8 Ill App2d 438.

"We think the word 'contiguous' should receive a uniform liberal construction throughout the Annexation Statute, having in mind the purpose of annexation, and consequently, we are of the opinion that the territory sought to be annexed is contiguous within the meaning of the act. The east side of the territory is 'adjacent to and parallel to' Flossmoor, and Kedzie Avenue is the common boundary between Flossmoor and the territory. 'Contiguity exists where boundary lines are coterminous.' Rafferty v. City of Covina, 133 Cal App2d 745, 285 P2d 94, 99 (1955); State ex rel. Pan American Production Co. v. Texas City, 157 Tex 450, 303 SW2d 780, 784 (1957)."

In the Spaulding case the Supreme Court considered the import of the word "contiguous" as employed in the Annexation Statute and had this to say:

"The intent of the legislature, as expressed by the word 'contiguous,' is that the territory to be annexed must have a substantial common boundary. Neither the use of a strip of land one-half mile long and 50 feet wide to connect two tracts of land to be included in the territory to be organized into a village, (Wild v. People ex rel. Stephens, 227 Ill 556), nor the annexation of a 75-mile network of roadways leading to a village merely because one can enter this disconnected maze from a point within the boundary of the village, complies with the statutory requirements of contiguity. (People ex rel. Adamowski v. Village of Streamwood, 15 Ill2d 595.) In the case at bar, however, the requirement of contiguity is met

15

by a common boundary of approximately one and one-half miles, largely in the form of streets, which separate the two areas. This creates contiguity in the common meaning of the word and within the evident intention of the legislature."

In Western Nat. Bank of Cicero v. Village of Kildeer, 19 Ill2d 342, 167 NE2d 169, cited by plaintiffs, we find the Supreme Court expressing the view that there is no comprehensive ruling covering the meaning of contiguity in all cases; that the tracts must adjoin one another "in a reasonably substantial physical sense"; but that whether the contiguity is reasonable must be judged upon the facts in each case.

In the Matter of the Petition of Westmoreland, Inc. et al., 15 Ill App2d 51, 145 NE2d 257 (Abst) this court said, "It is the opinion of this court that while no hard and fast rule can be laid down, that where there is a contiguity with a municipality of one border of the land sought to be annexed, and the other tracts of land are contiguous with each other, that is, have a common border or reasonable length or width, that such area is contiguous as required by the statute, without too much regard for the shape of the land in question."

Plaintiffs advance the argument that the Illinois Courts have laid down an inflexible ruling applicable in all cases to the effect that territory separated from a city by a street or highway is not contiguous to such city. Among the authorities cited are the Streamwood, Kildeer and Wild cases which have been already discussed herein in connection with defendants' argument. We are unable to agree that these cases or any of those cited by plaintiff, may be construed as holding that the authority granted a city under Section 7–8, Chap 24, Ill Rev Stats, 1959, to annex a highway contiguous thereto must be construed as a legislative recognition that tracts separated by a street or highway are not contiguous. We are not dealing here with an attempt to establish con-

16

tiguity by reason of common touching or strips or corridors leading to otherwise isolated tracts as was the situation in the cases cited. The west side of Tract 5 is adjacent to the east limits of Bloomington and the freeway is the common boundary between Tract 5 and the City. Under the Flossmoor decision, no other conclusion is warranted.

■ Plaintiffs insist that the permission granted to a municipality to annex contiguous territory even though used for street or highway purposes under the jurisdiction of the Department of Public Works and Buildings (§ 7–8, c 24, Ill Rev Stats, 1959) should be interpreted as legislative recognition that lands parallel and adjoining the limits of a municipality and separated therefrom only by a highway must remain noncontiguous and not subject to annexation until such highway is annexed by the municipality. In none of the cases cited in support of such a proposition has the court attempted to lay down any hard and fast rule for determining when any territory is or is not contiguous. On the contrary, the authorities emphasize that determination as to whether reasonable contiguity exists must depend upon the facts in each case. We find no case in which a reviewing court of this state has directly passed on the question as to whether a street or highway which is the common boundary between a city and territory sought to be annexed destroys the contiguity of the latter for annexation purposes except the Flossmoor case. The Appellate Court there considered facts very similar to those in the case at bar and we regard its opinion as being consistent with the views of the Supreme Court on the question as to the meaning properly attached to contiguity as used in the Annexation Statute as expressed in both the Kildeer and Streamwood cases. Accordingly upon the particular facts presented by this record and under the authority of the Flossmoor case we think the Gen-

17

eral Electric tract must be held to be reasonably contiguous to the limits of Bloomington.

For the reasons indicated, the judgment of the Circuit Court is reversed.

Reversed.

REYNOLDS, P. J. and ROETH, J., concur.