People of the State of Illinois ex rel. Cherry Valley Fire Protection District, a Public Corporation, Plaintiff-Appellee, v. City of Rockford, Illinois, Defendant-Appellant.

Gen. No. 69–68.

Second District.

March 16, 1970.

Rehearing denied April 16, 1970.

John W. Nielsen, of Rockford, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, and H. Emmett Folgate, for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

On April 2, 1969, the Circuit Court of Winnebago County entered a judgment of ouster against defendant as prayed for in a quo warranto action filed by relator, which is herein appealed. The complaint in quo warranto was to oust defendant city from exercising gov-

ernmental control over the territory annexed to the City of Rockford which is within relator's fire protection district. The annexation ordinance was passed and approved on November 28, 1967, allegedly pursuant to chapter 24, sections 7-1-8 and 7-1-10 of Ill Rev Stats 1967. Quo warranto proceedings were instituted on November 7, 1968, which was 21 days prior to the running of the Statute of Limitations. (Ill Rev Stats 1967, c 24, § 7-1-46.)

The defendant filed an answer admitting the annexation, stating that the said annexation was pursuant to statutory authority, alleging that the plaintiff had an adequate remedy at law and that quo warranto was not its exclusive remedy, a statement that the annexation was voluntary and, therefore, quo warranto would not lie, and an allegation that the plaintiff was barred from bringing this action by the provisions of chapter 85, sections 8-102 and 8-103 of Ill Rev Stats 1967. Included in these affirmative defenses was the defense of laches, and an allegation that the territory was not contiguous to the City of Rockford, and that the granting of the relief prayed for in the complaint would not result in great inconvenience and public detriment.

On hearing, relator introduced evidence showing that all owners of record, prior to the adoption of the annexation ordinance, did not sign the original petition for annexation as required by the statute. (Ill Rev Stats 1967, c 24, § 7-1-8) which states, in part, that the annexation petition should be "a written petition signed by the owners of record of all such land within such territory." This hearing was held on January 15, 1969, proofs closed, and the case continued for oral argument on February 21, 1969. Meanwhile, on February 10, 1969, the defendant secured from the three owners omitted from the original petition, their petitions for annexation dated February 10, 1969, and by motion asked to introduce these petitions into the record. This motion was

277

allowed over objection on February 13, 1969, and defendant amended its pleadings pursuant to chapter 110, section 46(1) (Ill Rev Stats 1967).

The trial court, on April 2, 1969, entered the judgment of ouster and stated therein: "(a) That the City of Rockford did not comply with Chapter 24, Section 7-1-8 in that the original petitions for the annexation dated November 15, 1967, upon which the annexation ordinance of November 28, 1967 was predicated, failed to include all owners of record of the territory annexed and that therefore said purported annexation is null and void; (b) That the territory so annexed was not contiguous to the City of Rockford within the contemplation of the law when such annexation was adopted and that therefore said annexation is null and void." This appeal by defendant city followed.

The issues, as presented in the pleadings, including the affirmative defenses, and the evidence, are whether or not (1) compliance with the annexation statutes is judged by the facts existing as of the date of the annexation ordinance or the date of hearing on the complaint in quo warranto challenging such ordinance, (2) defects in an annexation ordinance are procedural so that the ordinance is not void or are the defects jurisdictional so that they would render the ordinance void and subject to collateral attack, (3) relator is barred from maintaining this quo warranto action by laches, (4) the territory annexed is contiguous to the city as required by statute.

We first consider the question of whether or not compliance with the annexation statute is determined by the facts existing as of the date of the annexation ordinance, or when there is a hearing on the complaint in quo warranto, as of the time the trial court is called upon to render a final judgment in the quo warranto action.

■ The burden is on the defendant to prove that all the circumstances required by section 7-1-8 were present at the time the annexation ordinance was passed. In re Annexation of Territory to City of Springfield, 85 Ill App2d 191, 228 NE2d 755; People ex rel. Rogers v. City of Park Ridge, 86 Ill App2d 82, 230 NE2d 289; People ex rel. Jordan County v. Forest View, 21 Ill2d 384, 172 NE2d 780.

In re Annexation of Territory to City of Springfield, supra, the court said at p 194:

> "The territory sought to be annexed was not, at the time of the filing of the petition, contiguous to the annexing municipality. The intervening annexation of the territory between the municipality and the territory here involved is inoperative to satisfy the jurisdictional requirement of contiguity. Our inquiry must relate to ascertaining whether or not it was contiguous on February 9, 1966, for jurisdiction depends on the facts existing at the time of the commencement of the action."

In People ex rel. Rogers v. City of Park Ridge, supra, it was held that the signers of a petition for annexation of territory to the city under the applicable statutory provisions did not have the statutory right to subsequently withdraw their names from the petition, since a withdrawal petition does not appear in any of the appropriate statutory methods of annexation.

In People ex rel. Jordan County v. Forest View, supra, p 389, the Supreme Court concluded that the trial court erred in holding that only persons registered under the Election Code were eligible to sign the annexation petition, and in response to the contention that quo warranto proceedings could not be used to review the determination of the county court in annexation proceedings stated at pp 389 and 390:

"Defendant's contention that this quo warranto proceeding cannot be used to review the determination of the county court in the annexation proceeding is beside the point. Plaintiffs do not purport to review the determination of the county court. Rather, their claim is that the county court lacked jurisdiction to make any determination, because the failure of the petition to comply with the statutory requirements rendered it insufficient to confer jurisdiction upon the county court. The statutory requirements of the petition are jurisdictional, and the lack of jurisdiction on the part of the county court can be asserted in a quo warranto proceeding."

The city, to support its view that the compliance with the annexation statute must be decided as of the date of the hearing on the quo warranto complaint, rather than the date the ordinance was passed cites numerous disconnection proceedings decisions. LaSalle Nat. Bank v. Village of Burr Ridge, 81 Ill App2d 209, 225 NE2d 33; LaSalle Nat. Bank v. Village of Willowbrook, 40 Ill App2d 359, 189 NE2d 690; In re Petition of Cox, 32 Ill App2d 142, 177 NE2d 247 and In re Disconnection of Territory from Northfield, 4 Ill App2d 131, 123 NE2d 860. The same disconnection cases were cited by this defendant in In re Incorporation of Village of Capitol Heights, 41 Ill2d 256, 242 NE2d 247. In that case the Supreme Court held that where the trial court found that a petition for incorporation of the Village of Capitol Heights met the requirements of the Municipal Code, the action of the City of Rockford in later annexing contiguous territory did not warrant the dismissal of the petition for incorporation even though the outer limits of the annexed territory to the City of Rockford lies within the minimum one mile distance from the Village and stated that "once the court determines, after a hearing, that

the statute has been satisfied, subsequent developments are irrelevant." In that case the court stated at p 258:

". . . the city argues that the question of compliance with the statute must be determined as of the date of the hearing upon its objection, rather than the date of the hearing on the petition for incorporation of the village. To support this view it relies upon numerous disconnection proceedings. (Citations.)

"The statutory procedure by which owners of land upon the border of a municipality may have their land disconnected from the municipality includes a judicial hearing to determine whether the statutory requirements have been met. (Ill Rev Stats 1965, chap 24, par 7-3-6.) The cited cases hold that the situation at the time of this hearing is controlling, rather than the situation that existed when the petition for disconnection was filed. But the statutory procedure for the incorporation of a village also includes a judicial hearing to determine whether the statutory requirements for incorporation have been met. (Ill Rev Stats 1965, chap 24, par 2-3-6; see People ex rel. DuPage County v. Lowe, 36 Ill2d 372.) It was at such a hearing that the court found that the petition to incorporate the Village of Capitol Heights was in accord with the statute and ordered the referendum election. At that time the territory of the proposed village admittedly was more than one mile from the municipal boundaries of Rockford. The city, however, contends that the second hearing, precipitated by its annexation subsequent to the court's determination, must control. Nothing in the disconnection cases supports this argument."

281

■ It is thus apparent that the statutory procedure for disconnection includes a judicial hearing to determine whether the statutory requirements have been met. However, the statutory procedure (Ill Rev Stats 1967, c 24, § 7–1–8) does not include a judicial hearing, but the city council in effect holds a hearing to ascertain whether the facts as presented in the petition show compliance with the statutory prerequisites before it is permitted to exercise its power under section 7–1–8. It is, therefore, our conclusion that under the provisions of section 7–1–8 the sufficiency of the petition for annexation is determined at the time of the passage of the ordinance of annexation, because it is jurisdictional with the passage of the ordinance that all of the property owners involved were joined in the petition for annexation.

The only other finding made by the trial court is, as stated in the trial judge's verbal judgment of ouster dated March 27, 1969, and affirmed in his written judgment of ouster, as follows:

"And further I believe that the property is not contiguous to the city, under the rules of adjacent and contiguous property, and that the road is not parallel to the city, and that the property on both sides of the road is not municipal property or part of the city. I don't think that the addition of the footage adjacent to the road corrects that objection. The only part that really connects with the city is the road as it contacts with the other part of the property."

To understand the question of contiguity, it is necessary to visualize the legal description as shown by plat in the annexation ordinance as follows:

282

Skandia Hills Subdivision in the City of Rockford is, at that point, the southeast boundary of the City of Rockford and Lot 1 thereof lies in the extreme southeast corner of that subdivision. The only contact of the property, described in the annexation ordinance under consideration, with the city is on the south line of Lot 1 and covers only the easterly 20 feet out of the south line distance of 123.68 feet of Lot 1, and that east-west 20-foot distance is bounded on the east by a line running south 27 feet to the northern boundary of Guilford Road. The north-south line running from the west end of said 20 feet runs directly south a distance of 213 feet, which includes the 27 feet south to the northerly line of Guilford Road, the width of Guilford Road, which is 66 feet, and thence 120 feet south into the property owned by the Mauh-Nah-Tee-See Country Club. That part of Guilford Road annexed includes Guilford Road running east from the city limits and covers that road a distance on the north side 1970 feet and on the south side of Guilford Road 1276 feet due east to the easterly boundary of Roxbury Knolls Subdivision. None of the property lying north of Guilford Road in this area is annexed to the city. Roxbury Knolls Subdivi-

sion is entirely south of Guilford Road and contains 54 lots. The 1276 feet of Guilford Road plus 694 feet, which is the width of Roxbury Knolls Subdivision, together equal the 1970 feet of Guilford Road annexed on its northerly boundary. The city had previously annexed the same Roxbury Knolls Subdivision on August 22, 1967, and in a prior quo warranto proceeding filed against it by the same plaintiff involved here, the circuit court of Winnebago County entered a judgment of ouster dated November 3, 1967. In the prior quo warranto proceeding a strip of land 20 feet wide, which is along the northern boundary of the country club and south of Guilford Road, was included in that annexation.

██ On November 28, 1967, the city reannexed this same property but added a strip of land 100 feet wide and 1276 feet long to the 20 feet, all of which belonged to the country club. This last annexation, of course, is the one involved in this suit. The intent of the legislature, as determined by the courts, is that the word "contiguous" means that the territory to be annexed must have "a substantial common boundary," Spaulding School Dist. No. 58 v. Waukegan, 18 Ill2d 526, 529, 165 NE2d 283, or must have a "common border of reasonable length or width." In re Westmoreland, Inc., 15 Ill App2d 51, 145 NE2d 257, or must "touch or adjoin one another in a reasonable substantial physical sense," Western Nat. Bank of Cicero v. Village of Kildeer, 19 Ill2d 342, 352, 167 NE2d 169. In People ex rel. Nash v. City of Loves Park, 59 Ill App2d 297, 207 NE2d 490, this court stated:

> "Chapter 24, par 7–1–10, Ill Rev Stats 1963, provides that a municipality may annex territory dedicated for highway purposes if such territory is contiguous to such municipality. In People ex rel. Adamowski v. Village of Streamwood, 15 Ill2d 595, the Supreme Court held that contiguous as employed

284

in the statute 'must mean contiguous in the sense of adjacent to and parallel to the existing municipal limits.' Here the highway annexation described in Counts 7, 8, 9, and 14 were not adjacent to nor did they parallel the boundaries of Loves Park, but extended far beyond the same. Accordingly, we must hold that such annexation failed to meet the contiguity requirements of the statute."

■ The defendant submits that these cases do not correctly define the word "contiguous" as they were all decided prior to December 7, 1967, when the legislature made effective section 7–1–1, chapter 24, which states in part: "The new boundary shall extend to the far side of any adjacent highway, . . ." and states that now it is not necessary that the roadway be adjacent and parallel as stated in the Streamwood case, but a roadway can be, by the intent of the legislature, perpendicular and not parallel to the annexing municipality. We believe that the defendant has overlooked the fact that in section 7–1–1, chapter 24, which allows acquisition of adjacent highways, the annexation must still be "contiguous" to be valid. We do not believe it was the intent of the legislature to change the definition of "contiguous" as announced by the case law. In People ex rel. Coojar Realty Corp. v. Village of Burr Ridge, 81 Ill App2d 203, 225 NE2d 39, it is stated on page 206:

"This court is of the opinion, however, that cases dealing with annexation and disconnection of privately owned tracts which are neither streets nor highways cannot decide this case. There are precedents which deal directly with street and highway annexations which we cannot disregard."

And at page 208:

"While there may be circumstances under which a municipality may have relief from the interposi-

285

tion of an artificial barrier which it may never otherwise surmount, this is not authority for its affirmative effort to extend its restraint of ordinary development of an unincorporated area solely by the mechanism of a roadway which it seeks to project beyond its borders with an eye to the future.

"The annexation of relator Coojar's property here is dependent on the validity of the prior annexation of the portion of Route 66 projecting beyond its borders. We hold that such roadway annexation as here attempted is invalid."

██ Under the circumstances here present it was not error for the trial court to hold that the property sought to be annexed is not contiguous to the city under the rules applying to adjacent and contiguous property. The court took judicial notice of the earlier quo warranto proceeding and decided against the defendant where land of only 20 feet in width on the south edge of Guilford Road was to be annexed and could very well have concluded that addition of a further strip of land 100 feet to the south of that 20-foot strip could not make an otherwise invalid highway annexation proper under these circumstances. In any event, it is apparent that the purported annexation here touches the City of Rockford a distance of only 20 feet at a point 27 feet north of the north edge of Guilford Road. This is the same 20 feet which touched the City of Rockford in the earlier annexation attempt. The trial court was justified in concluding that this does not meet the requirement that there be a "substantial common boundary."

██ Another contention of the city is that the petitioners are barred from maintaining this action upon the theory of laches. Both parties agree that laches will not ordinarily bar an action in quo warranto brought on

behalf of the People unless a judgment of ouster therein would result in great public inconvenience and detriment. People ex rel. Coojar Realty Corp. v. Village of Burr Ridge, supra. Counsel for plaintiff has conceded in oral argument that even though the annexation proceedings contained jurisdictional defects, nevertheless laches may be asserted as an affirmative defense if a judgment of ouster would result in great public inconvenience and detriment. The trial court in its oral and written judgment of ouster did not mention or decide the validity of the affirmative defense of laches. Although conflicting evidence was presented as to whether or not laches should apply, we will not go into that matter for reasons hereinafter stated. The plaintiff contends that the court did consider the question of laches, but the defendant states that the court did not consider the affirmative defense of laches because it had decided the defects in the passage of the ordinance of annexation were jurisdictional and "the judge, body or officer annexing the territory did not at the time of such annexation have jurisdiction of the subject matter." Chapter 24, § 7-1-46.

In The People ex rel. Jordan County v. Forest View, supra, the court remanded the cause for further proceedings because the trial court did not consider the issues of laches and acquiescence. In deciding that case, and in commenting upon People ex rel. Lindsey v. Board of Education, 3 Ill2d 159, 120 NE2d 887, wherein the basis for the decision was that the granting of a judgment of ouster would be manifestly against the public interest and the doctrine of laches was invoked for that reason, the court stated at page 391:

"If there are any factors in the present case comparable to those which gave rise to the application of the doctrine of *laches* in the Lindsey case,

they are not properly before us on this appeal. Defendant's answer presented several affirmative defenses, among them that plaintiffs' claim was barred by *laches* and acquiescence, and that the granting of the relief prayed for would be against the public interest and would result in great inconvenience and public detriment. Plaintiffs' reply, while admitting some of defendant's factual allegations with respect to these affirmative defenses, denied others, and presented counter allegations, and, with respect to others, alleged a lack of sufficient knowledge to either affirm or deny. The trial court heard no evidence but decided the case solely on the basis of the pleadings and the documents filed in connection therewith. The trial court did not rule specifically upon any of the affirmative defenses nor did it make any finding that the granting of the relief prayed for would result in great inconvenience and public detriment. The only basis for the decision appearing in the judgment order is the finding that only persons duly registered under the Election Code were eligible to sign the annexation petition, and that the annexation proceedings were valid. We do not understand defendant to contend that a general finding in the judgment order that 'the issues herein are with the Defendant and against the Plaintiffs,' is equivalent to a specific decision in favor of defendant with respect to the question of *laches* and the public interest. Since the pleadings presented disputed questions of fact with respect to these matters, no such decision could have been made by the court without the taking of evidence."

 Although the trial court in our case did hear conflicting evidence as to the affirmative defense of

288

laches, it based its decision on other grounds and did not rule specifically on the affirmative defense of laches or make any finding that the granting of the relief prayed for would not result in great inconvenience and public detriment. There was no specific decision here in favor of the defendant with respect to the question of laches and public interest. We, therefore, must reach the same conclusion reached by the Supreme Court in the Forest View case as the defendant is entitled to a decision on the defense of laches. For that reason the judgment will have to be reversed and remanded to the trial court for further proceedings.

■ Finally, it is argued by the plaintiff that the judgment in the prior quo warranto proceeding is res judicata as to the issues in this case. A search of the record fails to reveal that the question of res judicata was properly raised or decided by the trial court. Therefore, this court will not consider the issue of whether or not the prior quo warranto proceeding was res judicata as to the issues in this proceeding.

The judgment is reversed and the cause remanded to the Circuit Court of Winnebago County for further proceedings not inconsistent with this opinion.

Reversed and remanded.

DAVIS and SEIDENFELD, JJ., concur.