THE PEOPLE *ex rel.* EDWARD V. HANRAHAN, State's Attorney of Cook County, Plaintiff, *v.* THE VILLAGE OF WHEELING, Defendant-Appellee.— (FREDERICK DARMSTADT *et al.*, Intervenors-Plaintiffs-Appellants; LA SALLE NATIONAL BANK, Trustee, Intervenor-Defendant-Appellee.)

First District (2nd Division)   No. 61117

Opinion filed September 28, 1976.—Rehearings denied November 12, 1976.

Kreger and Karton, Ltd., of Chicago, for appellants.

Liebling & Hauselman, of Chicago, for appellee La Salle National Bank.

Paul E. Hamer, of Northbrook (Ralph L. Brill, of counsel), for appellee Village of Wheeling.

Mr. JUSTICE HAYES delivered the opinion of the court:

On 31 March 1971, 41 days after the recordation of the relevant annexation ordinance, the State's Attorney of Cook County, on behalf of

the People of the State of Illinois, brought a complaint in quo warranto which sought to declare void the annexation of a certain subject property to the Village of Wheeling (hereinafter Village) and to oust the Village from exercising jurisdiction over the subject property. The property was described as follows:

"The Northwest quarter of the Southwest quarter of Section 23, Township 42 North, Range 11 East of the Third Principal Meridian in Cook County, Illinois."

The property is owned by the La Salle National Bank (hereinafter Bank) as trustee for the sole beneficiary of Land Trust No. 38971, who is Arnold Leibling. The property consists of 40 acres of land which touched the then existing Village boundaries (prior to the said annexation) at only a single point located on the northeast corner of the subject property. Immediately east of the subject property and south and west of the Village boundary is property belonging in part to the Arlington Heights Township High School District No. 214. The Archdiocese of Chicago owns the land immediately north of the subject property and west of the Village boundary. A public thoroughfare, Wheeling Road, runs alongside the western boundary of the subject property for a distance of 1320 feet. This roadway meets the then existing limits of the Village only at the northern boundary of the Archdiocesan property. The following diagram is included for clarification:

A city or village has no power to extend its corporate limits except as authorized by statute. (*People ex rel. Marre v. Countryside Sanitary District* (1972), 5 Ill. App. 3d 747, 284 N.E.2d 308.) The statute governing the instant voluntary annexation is section 7—1—8 of the Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 7—1—8), which provides as follows:

"Any territory which is not within the corporate limits of any

municipality but which is contiguous to a municipality and which territory has no electors residing therein, or any such territory with electors residing therein, may be annexed to the municipality in the following manner: a written petition signed by the owners of record of all land within such territory, or if such territory is occupied, by the owners of record and by all electors residing therein, shall be filed with the municipal clerk. The petition shall request annexation and shall state that no electors reside therein (or that all such electors residing therein join in the petition, whichever shall be the case) and shall be under oath. The corporate authorities of the municipality to which annexation is sought shall then consider the question of the annexation of the described territory. A majority vote of the corporate authorities then holding office is required to annex. The vote shall be by 'yeas' and 'nays' entered on the legislative records. A copy of the ordinance annexing the territory together with an accurate map of the annexed territory shall be recorded with the recorder of deeds and filed with the County Clerk within the county wherever the annexed territory is located."

In its answer to the complaint in quo warranto, the Village alleged compliance with the above-quoted voluntary annexation statute. It alleged that, on 12 January 1971, a petition submitted by the Bank, in its capacity as trustee, voluntarily to annex the subject property was filed with the Village Clerk. The petition averred that the subject property was vacant; that there were no electors residing therein; that the property was contiguous to the then existing Village corporate boundaries; that the petitioner desired to use the property for multifamily purposes as provided in an B-4 multifamily district of the Village Zoning Ordinances; that application for said zoning was being made simultaneously with the instant petition; and that petitioner, as trustee and not individually, was the sole owner of record of the subject property. The answer further alleged that the Village corporate authorities had, on 8 February 1971 by a vote of six "yeas" and no "nays", enacted an ordinance annexing the subject property. On 18 February 1971, a copy of the annexation ordinance, together with an accurate map of the annexed territory, had been recorded with the Recorder of Deeds of Cook County and filed with the Cook County Clerk. On 8 March 1971, the Village had adopted an ordinance zoning the subject property as R-4.

The answer filed by the Village also pleaded the affirmative defenses of laches, alleging that, in the 41-day interval between the recordation of the annexation ordinance and the filing of the instant quo warranto action, the Village had incurred expense in extending certain services to the subject property.

On 16 June 1971, the Bank was granted leave to intervene as a party defendant. In its answer to the complaint in quo warranto, the Bank alleged that it and its beneficiary, in reliance upon the annexation ordinance, had incurred substantial expenses in connection with the zoning hearings and with the installation of utilities on the subject property. The Bank further alleged that the Village had changed its position in reliance upon the annexation ordinance by supplying water, sanitary sewers, police and fire protection to the subject property.

Motions for summary judgment were filed both by the State's Attorney and by the Village. In an order dated 18 November 1971, then Circuit Court Judge Edward Egan denied the cross-motions for summary judgment. The order stated that, although the subject property was not contiguous to the Village as a matter of law, the remaining issue of laches involved a material question of fact which precluded entry of a summary judgment. A trial was set solely on the question of fact relating to the laches issue.

Several continuances were granted by the respective judges who presided over the case. On 8 July 1974, Judge Raymond K. Berg ordered the issue of contiguity taken under advisement and further ordered that evidence on the laches issue be submitted at a hearing set for the following week.

At that hearing, the following evidence was adduced from a filed stipulation of facts and from the testimony of Arnold Leibling, the sole beneficiary of the land trust. During the time interval between the recordation of the annexation ordinance and the filing of the instant quo warranto action, Leibling had paid a land planner $750 for services rendered in connection with zoning hearings held by the Village. An engineering firm had also been retained by Leibling, at a cost of $1090.62, to prepare plans for the installation of sewer and water main extensions on the subject property and for the hookup to Village mains. These plans had been drawn prior to 31 March 1971, the date on which the complaint in quo warranto had been filed by the State's Attorney. Because Leibling had no knowledge of the instant lawsuit until the first week of June of 1971, installation of the said sewer and water main extensions had begun on 5 May 1971 pursuant to permits issued by the Village. The cost of the said installation was $13,632.75, paid by Leibling. No evidence was presented at the hearing of any substantial actual expenditures by the Village in connection with the purported annexation; the affidavit of Paul Hamer (the Village Attorney of Wheeling), is conclusional in nature and does not demonstrate that a judgment of ouster would involve any substantial public detriment.

Judge Berg, on 16 July 1974, entered an order that judgment be granted in favor of defendants. The order contained two findings: (1) that, as a

matter of law, the subject property is contiguous to the village; and (2) that plaintiff was guilty of laches in instituting the action.

On 13 August 1974, Frederick Darmstadt and Judith L. Fogerty (hereinafter intervenors-plaintiffs) filed a petition to intervene as parties plaintiff and a motion to vacate the judgment order of 16 July 1974. The intervenors-plaintiffs were then also petitioners in a separate proceeding to incorporate the city of Prospect Heights, which city, as proposed, would include the Archdiocesan and the School District property and would therefore surround the subject property on all four sides except for Wheeling Road itself and except for the single point at which the subject property touched the Village. The petition to intervene alleged three special interests of the intervenors-plaintiffs in the quo warranto action which were described as greater than the interests of the general public. The first was that Fogerty is the owner and resident of land located within 500 feet of the subject property. The second was that both intervenors-plaintiffs would be residents of the proposed city of Prospect Heights. The third was that, as petitioners to incorporate the proposed city, intervenors-plaintiffs should be able to represent the proposed city, which city, had it been in existence, would have had standing to intervene.

Attached as an exhibit to the petition to intervene was a letter from the office of the State's Attorney of Cook County. This letter informed intervenors-plaintiffs of the decision of the said State's Attorney not to appeal Judge Berg's ruling, but expressed the desire that intervenors-plaintiffs intervene for the purpose of pursuing the said appeal. Also attached to the petition was a letter from the Attorney General of Illinois declining to intervene in the instant action, either at the trial or appellate level.[1]

The trial court granted the petition to intervene but denied the motion to vacate the judgment. Intervenors-plaintiffs thereupon filed a notice of appeal from the judgment order and from the order denying the motion to vacate. The Bank filed a notice of cross-appeal from the order granting intervenors-plaintiffs' petition to intervene.

---

[1] The transcript of the hearing on the petition to intervene provides useful background information. It was at the instance of intervenors-plaintiffs that the State's Attorney of Cook County had filed the instant quo warranto action (as authorized by Ill. Rev. Stat. 1971, ch. 112, par. 10). When intervenors-plaintiffs had requested the said State's Attorney to file the instant action, it developed that his office had manpower problems in assigning a regular Assistant State's Attorney to handle the matter. For that reason, intervenors-plaintiffs suggested that their own private retained attorney, who was familiar with the facts, be appointed as a special Assistant State's Attorney to handle the proceeding at no expense to the office of the State's Attorney. This suggestion was accepted. But when the trial phase of the proceeding was concluded in 1974, the then State's Attorney of Cook County was a different individual and the policy of the office as to the appointment of special Assistant State's Attorneys had changed. Hence, the then State's Attorney declined to appeal or to continue the appointment of the private retained attorney of intervenors-plaintiffs as a special Assistant State's Attorney for the purpose of pursuing an appeal, but he encouraged intervenors-plaintiffs to intervene for that purpose.

Subsequently, the Bank moved in the trial court for leave to file an amendment to the affidavit of Paul Hamer which had been previously filed in support of the Village's motion for summary judgment. The amended affidavit averred that the water mains extended to the subject property cannot be used other than on the subject property. The affidavit also recited a resolution of the Village, adopted on 3 December 1962, which prohibited the Village from supplying water to real estate outside of its own corporate limits. The trial court refused to permit the filing of the amended affidavit as additional evidence, but allowed it to be submitted as an offer of proof.

The Bank has moved in this court to dismiss the appeal of intervenors-plaintiffs owing to lack of standing. We ordered that motion to be taken with the appeal. The issue raised by the motion will be resolved in this opinion.

The following issues, therefore, are raised for our consideration:

(1) Do intervenors-plaintiffs have standing to intervene in the trial court for the purpose of prosecuting this appeal?

(2) Is the subject property contiguous to the Village within the meaning of the annexation statute?

(3) Is this action barred by the doctrine of laches?

OPINION

I.

As a threshold issue, we will consider first the issue raised by defendants' motion in this court to dismiss this appeal, namely, whether intervenors-plaintiffs have a sufficient interest in the quo warranto action filed on the relation of the State's Attorney of Cook County to be allowed to intervene after judgment in order to pursue this appeal, when the State's Attorney and the Attorney General of Illinois have declined to appeal. Intervention is controlled by section 26.1 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 26.1), which in relevant part provides both for intervention as of right and for permissive intervention:

"(1) Upon timely application anyone shall be permitted as of right to intervene in an action: (a) when a statute confers an unconditional right to intervene; or (b) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by a judgment, decree or order in the action; or (c) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court or an officer thereof.

. (2) Upon timely application anyone may in the discretion of the court be permitted to intervene in an action: (a) when a statute

confers a conditional right to intervene; or (b) when an applicant's claim or defense and the main action have a question of law or fact in common."

In *People v. Wood* (1952), 411 Ill. 514, 104 N.E.2d 800, our Supreme Court held that, in order to be entitled as of right to intervene as a party plaintiff in a quo warranto suit for the purpose of pursuing an appeal, a private citizen must possess sufficient special personal interests (as distinguishable from the interest of the public at large) as would have entitled him or her to initiate the quo warranto proceeding.

Quo warranto is the proper remedy for seeking to invalidate an annexation of territory by a municipal corporation. (*Cipowski v. City of Calumet City* (1926), 322 Ill. 575, 153 N.E. 613; *Malecki v. First State Bank* (1973), 13 Ill. App. 3d 979, 301 N.E.2d 623.) But the Quo Warranto Act (Ill. Rev. Stat. 1971, ch. 112, par. 10) contains restrictions upon the maintenance of the action by private citizens:

"The proceeding shall be brought in the name of the People of the State of Illinois by the Attorney General or State's Attorney of the proper county, either of his own accord or at the instance of any individual relator; or by any citizen having an interest in the question on his own relation, when he has requested the Attorney General and State's Attorney to bring the same, and the Attorney General and State's Attorney have refused or failed so to do, and when, after notice to the Attorney General and State's Attorney, and to the adverse party, of the intended application, leave has been granted by any court of competent jurisdiction, or any judge thereof."

■■■ Certain principles have evolved from the case law interpreting this statute. In order to initiate a quo warranto suit, a private citizen must have special interests personal to him and not merely an interest in common with the general public. These special personal interests must be specifically pleaded. Mere conclusional pleading of a special interest is insufficient. (*People ex rel. Buffalo Utility Co. v. Village of Buffalo Grove* (1967), 85 Ill. App. 2d 382, 229 N.E.2d 401; *People ex rel. Hettlemen v. Board of County Commissioners* (1968), 102 Ill. App. 2d 310, 243 N.E.2d 531.) Whether leave to initiate a complaint should be granted lies within the discretion of the trial court, which may consider all of the circumstances and conditions, the motives of the parties, and whether the public interest will be served. Bare allegations of status as a nearby resident of the subject property and as a taxpayer are insufficient to invoke the court's discretion. (*People ex rel. Vanderhyden v. Village of Elwood* (1972), 5 Ill. App. 3d 590, 284 N.E.2d 668.) However, an individual who suffers a demonstrable adverse effect on his own taxes does possess a sufficient personal interest. (*People ex rel. McCarthy v.*

*Firek* (1955), 5 Ill. 2d 317, 125 N.E.2d 637; *People ex rel. Henderson v. City of Bloomington* (1962), 38 Ill. App. 2d 9, 186 N.E.2d 159.) A resident of the subject property sought to be annexed does not have standing by that fact alone; there must be additional facts alleged showing a special personal interest. *Edgewood Park #2 Homeowners Association v. Countryside Sanitary District* (1969), 42 Ill. 2d 241, 246 N.E.2d 294.

■■ Under the intervention principle established by *People v. Wood*, it is our opinion that the instant intervenors-plaintiffs do not possess sufficient special personal interests to have been entitled to have initiated this quo warranto action; consequently, they are not entitled to intervene as of right. The petition for intervention contains three alleged special interests distinguishable from the common interest of the general public. The first is a bare allegation that Fogerty is a nearby resident of the subject property and a taxpayer. The second is a bare allegation of status as potential residents of the proposed city of Prospect Heights. But even if intervenors-plaintiffs were residents of the subject property itself, this allegation would be insufficient without a further showing. The third interest alleged (that intervenors-plaintiffs are petitioners to incorporate the proposed city of Prospect Heights) is too speculative an interest to support the initiation of a quo warranto action as of right. Therefore, had the petition to intervene in order to pursue this appeal been denied by the trial judge, the denial would not have been erroneous as a deprivation of intervention as a matter of right.

In fact, however, the trial judge, while expressing reservations as to his authority, exercised his discretion to permit intervention. The issue thus becomes whether intervenors-plaintiffs have sufficient interest to qualify for permissive intervention under section 26.1(2) of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 26.1(2)).

■■ This subsection was designed to liberalize intervention practice in Illinois and particularly to relax the requirement of a direct interest in the lawsuit. (*Mensik v. Smith* (1960), 18 Ill. 2d 572, 166 N.E.2d 265.) However, the intervenor must still have more than a general interest in the proceedings (*County of Cook v. Triangle Sign Co.* (1963), 40 Ill. App. 2d 202, 189 N.E.2d 25); he must have an enforceable or recognizable right in the subject matter of the lawsuit. *Cooper v. Hinrichs* (1957), 10 Ill. 2d 269, 140 N.E.2d 293.

■■ We have not found, nor have the parties directed us to, any Illinois case decision wherein an order *granting* leave to intervene in a quo warranto action was reversed on appeal. In our opinion, the discretion of the trial judge to allow intervention may here be affirmed on the basis of the special interest alleged by petitioners in their capacity as petitioners to incorporate the proposed city of Prospect Heights. Although this interest in our opinion is inadequate to support intervention as of right, it fulfills

the less stringent requirements for permissive intervention. Intervenors-plaintiffs may be said in some sense to represent the proposed city, or at least to represent that segment of the public involved who are in favor of the proposed city. Because the city, if *it* were in existence, would have had sufficient interest to intervene, the intervenors-plaintiffs, standing in the shoes of the proposed city, may be allowed to intervene.

In *Forestview Homeowners Association, Inc. v. County of Cook* (1974), 18 Ill. App. 3d 230, 309 N.E.2d 763, an unincorporated 96-acre tract of land in Cook County, 1½ miles from the Village of Northbrook, was reclassified by the Board of Commissioners of Cook County from an R-3 single-family residence district to an R-6 general residence district, and a special use was granted to permit the construction of a multifamily housing development. Suit was filed by the plaintiff homeowners association to contest the validity of the amendatory zoning ordinance and the special use. The Village of Northbrook, not an original plaintiff, was granted leave by the trial judge to intervene as a party plaintiff. On appeal, the standing of the Village to intervene as a party plaintiff was put in question. The court concluded that the Village, a home rule unit, had authority to litigate the validity of the county zoning ordinance. In a footnote, the following observation which is pertinent to the instant case was made:

"⁴ We take judicial notice that much of unincorporated Cook County, as it develops, becomes annexed to existing municipalities. Therefore, the Village of Northbrook not only had a right, but a duty, to concern itself with the development of property practically adjoining its village limits. This property, the 96-acre tract, was close enough so that the village, within the interests of its police powers, was rightfully concerned with the effect its development would have on the public health, safety, welfare and morals within the village. As a practical matter, highways, public water supply, sanitary sewers, storm sewers and drainage affected by nearby properties, in turn, directly affect the Village in discharging its duties within the scope of its police powers." 18 Ill. App. 3d 230, 238, 309 N.E.2d 763, 769.

The interest of the proposed city of Prospect Heights in the development of the subject property is probably greater than that of the Village of Northbrook in the *Forestview* case. The petition for intervention alleges that the subject property is surrounded on all four sides by the area proposed to be incorporated within the city of Prospect Heights. Allegations of an intervening petition are to be taken as true in determining whether the interest of a petitioner is sufficient. (*Strader v. Board of Education* (1953), 351 Ill. App. 438, 115 N.E.2d 539.) If the proposed city comes into existence with the proposed bound-

aries, the subject property will be subject to involuntary annexation by the said city. (Ill. Rev. Stat. 1971, ch. 24, par. 7—1—13.) Hence, there is a greater likelihood of future annexation of the subject property to the proposed city of Prospect Heights than there was of the future annexation of the subject property in *Forestview.*

Defendants contend that because a municipality does not have standing to bring an action challenging the annexation of land contiguous to its boundaries by another municipality (*People ex rel. Brooks v. Village of Lisle* (1974), 24 Ill. App. 3d 432, 321 N.E.2d 65; but see *Forestview Homeowners Association, Inc. v. County of Cook*), Prospect Heights, even if it were in existence, would have no standing to intervene in the instant action. But *Lisle* is distinguishable on two grounds: (1) the subject property in the instant case is completely surrounded by the proposed municipality; (2) a lesser special personal interest is needed to support permissive intervention than the special interest necessary to initiate a quo warranto action.

The recommendation of the State's Attorney that intervenors-plaintiffs carry on this appeal further supports the trial court's exercise of discretion. In *People v. Wood,* our Supreme Court discussed the reasoning underlying the restrictions on quo warranto actions litigated by private individuals:

> "The rules and limitations of *quo warranto,* which preclude appellant's right to review, are well justified when it is considered that the vesting of the power to institute, dismiss or appeal a *quo warranto* proceeding in the Attorney General or State's Attorney, where purely public rights are concerned, avoids the confusion and conflict which would occur if others could interfere at some stage of the proceeding, or if concurrent control of the *quo warranto* remedy was to vest in other hands. Rules and principles evolved for, and having the effect of avoiding conflicts and in eliminating possible disputes between State officers and State entities in   *quo warranto* actions, are founded upon practical considerations which should not be lightly overturned." (411 Ill. 2d 514, 525, 104 N.E.2d 800, 806.)

Hence, the recommendation of the State's Attorney is significant because it eliminates any possible problems as to concurrent control of the quo warranto action. *People v. Thompson* (1968), 101 Ill. App. 2d 104, 242 N.E.2d 49.

Finally, in *People ex rel. Boyington v. Northfield Township High School District No. 225* (1949), 402 Ill. 435, 84 N.E.2d 553, the discretion of the trial judge to allow intervention by two private citizens in a quo warranto proceeding was upheld because the issues raised in the petition to intervene were germane to the action. Although *Boyington* predates

the enactment of section 26.1, it is still useful as precedent for the case at bar because section 26.1 was designed to liberalize intervention practice.

For the above reasons, we hold that intervenors-plaintiffs have more than a general interest in these proceedings, and the permissive intervention allowed by the trial judge was not an abuse of discretion.

## II.

■■ We now turn to the merits of this controversy. The parties disagree as to whether the subject property is contiguous to the Village, within the meaning of the annexation statute, as a matter of law. We are not restricted to annexation cases to aid us in resolving this question. Contiguity has the same meaning under the disconnection statutes as under the annexation statutes (*In re Annexation to the Village of Buffalo Grove* (1970), 128 Ill. App. 2d 261, 261 N.E.2d 746); and its use in the incorporation statutes is equally applicable to an interpretation of its meaning in the annexation statutes (*La Salle National Bank v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 209, 225 N.E.2d 33).

Contiguous should receive a liberal construction, bearing in mind the purpose of annexation. (*In re Annexation to Flossmoor v. Mutual National Bank* (1959), 23 Ill. App. 2d 440, 163 N.E.2d 215.) In *Buffalo Grove*, the court stated the currently accepted definition of contiguity:

> " 'Contiguity' is satisfied by a touching or adjoining in a reasonably substantial physical sense; however, the line of demarcation between the reasonableness or unreasonableness of a contiguity must be drawn on the facts of each case [Citation.] The finding of the trial court as to contiguity or lack of it will not be disturbed on appeal unless it is manifestly against the weight of the evidence." 128 Ill. App. 2d 261, 265-266, 261 N.E.2d 746, 749.

■■ Point-to-point touching, or cornering, is generally not sufficient to satisfy the requirement of contiguity. (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 167 N.E.2d 169; *People ex rel. Cherry Valley Fire Protection District v. City of Rockford* (1970), 120 Ill. App. 2d 275, 256 N.E.2d 653; *In re Annexation to the Village of Plainfield* (1975), 25 Ill. App. 3d 1026, 323 N.E.2d 841.) This principle derives from *Wild v. People ex rel. Stephens* (1907), 227 Ill. 556, 81 N.E. 707. *Wild* involved a proposed incorporation of territory composed of a central area from which eight tentacles of varying lengths and widths extended in different directions. One tentacle contained two strips of land whose juncture was at the point of two right angle corners. The court held the more remote strip of that tentacle was not contiguous, and stated:

> "The only way in which the 310-foot strip touches or adjoins the 200-foot strip is by the fact that they corner with each other. The west line of the first extended is the east line of the second, and the

south line of the first extended is the north line of the second. No vehicle, and, in fact, no person, could pass from one strip to the other without passing over or upon lands not within the village. The two strips last mentioned are not contiguous." 227 Ill. 556, 560, 81 N.E. 707, 708.

Defendants contend "special circumstances" make *Wild* and its progeny of cases inapplicable to the case at bar. In *People ex rel. Village of South Barrington v. Village of Hoffman Estates* (1964), 30 Ill. 2d 385, 198 N.E.2d 97, our Supreme Court allowed annexation of a territory which did not physically touch the annexing municipality at all. The annexed territory paralleled the northern boundary of the municipality for a distance of three miles, but throughout that distance was separated from the municipality by a 300-foot-wide tollway which was statutorily immune from annexation. A roadway that passed over the tollway provided direct access between the municipality and the annexed territory. The court compared the tollway to a natural obstruction, such as a navigable waterway, which will not prevent contiguity if there exists a unity of purpose and facilities between the two areas. The municipality was already affording police protection, garbage removal, and other services in the annexed territory. Under these circumstances, the court held that there was a sufficient community of interest to meet the statutory prerequisite of contiguity.

■■ Subsequent cases have held that unity of purpose and facilities is not an additional requirement or exception to the need for a reasonably substantial physical touching, but a factor to be considered in the determination of contiguity. *In re Annexation to the Village of South Barrington* (1972), 7 Ill. App. 3d 958, 289 N.E.2d 1; *In re Annexation to the Village of Green Oaks* (1971), 1 Ill. App. 3d 773, 275 N.E.2d 462; *In re Annexation to the Village of Buffalo Grove.*

Plaintiffs argue, correctly we believe, that *Hoffman Estates* is inapplicable to the instant case because here the subject property is not ·prevented from physically touching the Village (other than at the single cornering point) by natural or artificial barriers. The property to the east, owned by the school district, may be annexed upon the adoption by the Board of Directors or Board of Education of a resolution recommending said annexation. (Ill. Rev. Stat. 1971, ch. 24, par. 7—1—14.) The land owned by the Catholic Archdiocese of Chicago, on the northern boundary of the subject property, is no different from privately owned land for purposes of annexation. Thus, the obstructions which rendered extensive boundary contact impossible in *Hoffman Estates* do not exist in the case at bar.

Furthermore, the support in the record for defendants' contention of unity of purpose and facilities is questionable. Defendants direct our

attention to the affidavit of Paul Hamer filed in support of the Village's motion for summary judgment. Paragraph 3 of that affidavit alleged:

> "That since the recording of the plat of annexation on March 13, 1971, the Village has supplied and is currently furnishing water, sanitary, police and fire protection to the premises in question."

An affidavit by Donald J. Kreger, then serving as a special assistant State's Attorney, in response to the Village's motion for summary judgment, averred "that at the time of the annexation the Village did not supply water, sanitary sewer, police or fire protection to the premises in question."

These two averments, read together, indicate that the Village did not begin rendering municipal services for the subject property until after the annexation ordinance was recorded with the recorder of deeds. However, our inquiry is limited to ascertaining whether or not the subject property was contiguous with the Village at the time the petition for annexation was filed. (*In re Annexation to the City of Springfield* (1967), 85 Ill. App. 2d 191, 228 N.E.2d 755.) The Village's attempt to bootstrap its position by supplying municipal services after the annexation was completed is irrelevant to the issue of contiguity (though relevant to the issue of laches). At the time the petition was filed, there was no unity of purpose or facilities between the two areas.

■■ *In re Annexation to Flossmoor v. Mutual National Bank* (1959), 23 Ill. App. 2d 440, 163 N.E.2d 215, and *People ex rel. Henderson v. City of Bloomington* (1962), 38 Ill. App. 2d 9, 186 N.E.2d 159, cited by defendants, are distinguishable. In *Flossmoor*, the court approved the annexation of a parcel that was adjacent to and parallel with the annexing village, but physically separated by the west half of an avenue. *Henderson* involved a similar annexation of territory located across U.S. Route 66 freeway from the municipality. These decisions held that two areas may be contiguous, within the meaning of the annexation statute, even if separated by the common boundary of a street or highway. The case at bar does not involve a separation by a street or highway. It was a point-to-point touching, or cornering annexation, which has been consistently held invalid by Illinois courts. We conclude the subject property does not touch the Village in a reasonably physical sense, and the trial court's finding of contiguity was against the manifest weight of the evidence.

### III.

■■ The final issue for our determination is whether the instant quo warranto suit is barred by the equitable doctrine of laches. Section 7—1—46 of the Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 7—1—46) provides that an action contesting the annexation of territory to a

municipality must be initiated within one year after the date said annexation becomes final. However, consideration of the defense of laches is not foreclosed by the filing of a complaint in quo warranto within the applicable statute of limitations. *People ex rel. Coojar Realty Corp. v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 203, 225 N.E.2d 39.

The general law in Illinois is that the defense of laches may not be asserted where a complaint in quo warranto is filed and the public interest is involved. (*People ex rel. Phelps v. Kerstein* (1952), 413 Ill. 333, 108 N.E.2d 915.) But an exception is made if, as a result of inexcusable delay and public acquiescence, a judgment of ouster would result in great *public* inconvenience and detriment. Therefore, in a quo warranto proceeding, the court should consider all of the circumstances of the case. If it appears that the *public* will suffer harm rather than benefit, the public interest requires that laches be an available bar to the proceedings. *People ex rel. Lindsey v. Board of Education* (1954), 3 Ill. 2d 159, 120 N.E.2d 887.

*Lindsey* involved a challenge to a five-year-old school district organization. No issue as to any statute of limitations was raised. There was no excuse in the record for the time delay in filing the complaint in quo warranto. The organization was a matter of public record and the school board had been active in administrative activities, including levying and collecting taxes, disposing of school buildings, purchasing school buses, and issuing tax anticipation warrants. The prior school districts had ceased to exist, and their buildings had been disposed of and could not be returned. The result to the public of a judgment of ouster would have left many elementary and high school students without school facilities or funds to pay their tuition elsewhere. The defense of laches was allowed. In *People v. Junior College District No. 526* (1969), 42 Ill. 2d 136, 246 N.E.2d 292, a complaint in quo warranto, which attacked the incorporation of a junior college district and subsequent annexation of a special charter district, was filed nearly two years after the original organization. No issue was raised as to any statute of limitations. The following considerations were advanced in support of a laches defense:

> "This action was commenced on January 2, 1969, nearly two years after the junior college district was originally organized. In the interim its board has levied and collected taxes for the years 1967 and 1968 and has expended these monies to establish the Lincoln Land Junior College. The board budgeted $415,000 for the fiscal year ending June 30, 1968, and $1,145,239 for the fiscal year ending June 30, 1969. Land has been leased, and contracts have been entered into for the purchase of buildings and facilities for a temporary campus. A faculty and administrative personnel have been employed, and over 1500 students have enrolled and are now attending classes. On December 7, 1968, the voters of the junior

college district approved a $5.9 million bond issue by a three to one majority. The board has available $2.3 million for a permanent campus, and condemnation proceedings are currently underway." (42 Ill. 2d 136, 138-39, 246 N.E.2d 292, 294.)

Because the two-year delay was unexcused and a judgment of ouster would have denied a large population access to a junior college, the action was held barred by laches.

In *People ex rel. Cherry Valley Fire Protection District v. City of Rockford* (1970), 122 Ill. App. 2d 272, 258 N.E.2d 577, a complaint in quo warranto was filed by the State's Attorney on relation of a fire protection district seven months after a challenged annexation. The district had failed to exercise an available statutory method to challenge within 60 days of said annexation. During the seven months prior to filing the suit, $140,000 was spent for planning of a vocation school, and contracts were awarded for the construction of the school at a cost of $3,000,000. Construction had commenced by the time suit was filed, and abandonment of the plans resulting from an ouster would have involved considerable expense and the school would not have opened by 1970 as planned. The court found that much of the public detriment could have been avoided by utilization of the alternate remedy. The trial court's decision to deny ouster as sought was affirmed on the basis of laches.

These cases are illustrative of the type of circumstances in which laches may be successfully raised to bar a complaint in quo warranto. All contained concrete and definite evidence that significant public harm would result from an ouster. The instant case is different because the record does not show that specific harm, whether in the form of public expense or a loss of services, will be suffered by the public. A stipulation of fact, cited by the Bank, that the Village "has been prepared and able to furnish water, sanitary sewers and police and fire protection" to the subject property since the annexation, is too vague. The amended affidavit of the Village attorney, offered after intervenors-plaintiffs filed a notice of appeal, was properly refused to be filed as additional evidence by the trial court. (*City of Chicago v. Myers* (1967), 37 Ill. 2d 470, 227 N.E.2d 760.) However, even if admitted into evidence, it would not have supplied the concrete evidence of public harm that is needed for application of the doctrine of laches.

■■ The complaint against the Village of Wheeling was filed by the State's Attorney within a mere 41 days of the purported annexation. During this time, a small sum of money was spent by the sole beneficiary of the land trust in planning a water main extension and participating in zoning hearings. A larger amount was spent by him for installation of the water main after commencement of the action. Intervenors-plaintiffs contend that the expenses incurred after the complaint was filed should

not be considered. We need not decide if harm incurred after a lawsuit is commenced should be considered in a determination of laches. None of the beneficiary's expenses are relevant to the issue of laches because these are private losses. The key to the laches issue is the public harm which will result from a judgment of ouster. As the record does not disclose any specific public harm that will be suffered, the trial court improperly decided that the action was barred by laches.

For the reasons herein stated, the judgment of the trial court is reversed. Upon remand, the trial court is directed to enter judgment in favor of intervenors-plaintiffs declaring the annexation of the subject property by the Village to be void and without force and effect.

Reversed and remanded.

STAMOS, P. J., and LORENZ, P. J. (5th Division), concur.